Oscar B. (Buster) GRAY et al., Appellants,

v.

Jean E. KIRKLAND, Jr., Individually and d/b/a Palmetal Gin Company, Appellees.

No. 1142.

Court of Civil Appeals of Texas, Corpus Christi.

April 28, 1977.

Rehearing Denied May 19, 1977.

Gordon L. Briscoe, Brownsville, for appellants.

Neal Bonner, Bonner & Bonner, Harlingen, for appellees.

OPINION

YOUNG, Justice.

The sole question presented by this appeal is whether the claim made the basis of the appellees' suit here is a compulsory counterclaim and therefore barred by judgment rendered in appellants' prior suit. The trial court held that the claim was not barred. We agree.

Jean E. Kirkland, Jr., individually and as independent executor of the estate of Major Davis, deceased, and Dan A. Davis, G. Wayne Davis, and Wendell Davis all individually and d/b/a Palmetal Gin Company sued Oscar B. (Buster) Gray, Sterling S. Gray, and Jimmy A. Gray, all individually and d/b/a as Oscar B. Gray and Sons.

Plaintiffs, who, at all times material hereto, owned and operated the Palmetal Gin Company in Cameron County, brought this action against defendants, farmers and former gin customers, to recover the sum of $4,742.00 for cotton planting seed supplied by plaintiffs to defendants and utilized by the defendants to produce their 1974 cotton crop.

Defendants contended there and contend here that plaintiffs' claim was barred by virtue of the doctrine of *res judicata* because it arose out of the same transaction or occurrence which was the subject matter of the claims, under a contract of sale of cotton, previously asserted successfully by defendants, as plaintiffs, in Cause No. 59,-243–C, 197th District Court, Cameron County, Texas; and, therefore, was a compulsory counterclaim which should have been asserted in the prior cause under Rule 97(a), T.R.C.P. Following an appeal of that prior case to this Court, we reformed the trial court's judgment and affirmed. See *Traylor v. Gray*, 547 S.W.2d 644 (Tex.Civ.App.— Corpus Christi 1977, writ filed).

Following a trial before the court, without a jury, the trial court entered judgment and finding therein ". . . that Plaintiff's action in this cause had not matured prior to the time Cause Number 59,243–C, in the One Hundred Ninety-seventh Judicial District Court of Cameron County, Texas, was tried and decided on its merits . . ."; the trial court overruled defendants' plea of res judicata and entered judgment for plaintiffs in the amount of $4,742.00 along with attorney's fees and costs. The defendants appeal from that judgment.

■ Rule 97(a), T.R.C.P. (Supp.1977) reads, in part, as follows:

"(a) Compulsory Counterclaims, A pleading shall state as a counterclaim any claim within the jurisdiction of the court, not the subject of a pending action, which at the time of filing the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim . . ."

Failure to assert a compulsory counterclaim precludes assertion thereof in a subsequent action. *Griffin v. Holiday Inns of America*, 496 S.W.2d 535 (Tex.Sup.1973); *Harris v. Jones*, 404 S.W.2d 349 (Tex.Civ.App.—Eastland 1966, writ ref'd). But a party is not required, under Rule 97(a), to file a counterclaim unless the claim is mature at the time his answer is due. *Denbina v. City of Hurst*, 516 S.W.2d 460 (Tex.Civ.App.—Tyler 1974, no writ); 2 McDonald, Texas Civil Practice, § 7.49 p. 285 (1970).

To determine whether Palmetal's claim should have been asserted in Grays' previous suit, it is necessary to determine when Palmetal's claim became mature. It is Palmetal's position that the account did not mature until the Grays received payment for their cotton. The Grays assert, however, that the debt matured when the implied agreement to gin with Palmetal was broken. To determine which theory is correct it is necessary to examine the course of dealings of the parties as developed by the facts, which are virtually undisputed.

The dealings between the gin and the cotton farmer here involve many processes but, for the purpose of this opinion, we will focus on the supply of cotton planting seed by the gin to the farmer. From 1963 to 1973 the Grays ginned their cotton with Palmetal. For this ten-year period seed was advanced on credit to the Grays by Palmetal. It was the policy of the gin to allow this debt to remain in abeyance until the Grays sold their cotton.

The actual sale of cotton involved the gin as a type of middleman. The Grays would deliver their cotton to Palmetal where it would be ginned. The finished product would be shown to buyers by samples. The buyer would then pay the ginner, who

would then deduct the costs of ginning and the amount due for seed advanced by Palmetal to the Grays. In 1972, a system of advance contracting was begun in which the future crop was purchased before it was planted. At harvest time the farmers received the advance contract price for the cotton regardless of the harvest time market price. The ginner performed similar services for the farmer under the new system.

Through February 20, 1974 and March 5, 1974, the cotton planting seed, made the basis of this cause of action, was advanced by Palmetal to the Grays. These advancements were recorded in the ledger accounts of the gin on March 31, 1974. Previous to this period the Grays through Dan Davis, manager of Palmetal Gin, had entered into a contract to sell the Grays' cotton for 78¢ per pound. It was also understood at this time that the Grays would gin their cotton with Palmetal.

On July 13, 1974, Mr. Davis repudiated his contract for the sale of the Grays' cotton. whereupon the Grays began ginning their cotton with the Elrod Gin of Harlingen, Texas, soon thereafter and continued to do so throughout August. The Grays placed their cotton in the "government loan" after ginning and it had not been sold when the first suit went to trial on the merits. In fact, the cotton was not sold until 1975, beginning in June. On August 28, 1974, the Grays received a statement consisting of a copy of each of the cotton seed sale tickets and an adding machine tape reflecting the total of these tickets to be $4,742.00. Handwritten on the adding machine tape were the words "Bal. Due Gin." On December 31, 1974, the Grays received an auditor's statement from Palmetal stating the amount due on their account as $4,742.00, and requesting that they sign and return the statement if it was correct.

The Grays filed suit for breach of contract on July 26, 1974, against Palmetal and others. Palmetal answered without offsets or counterclaims on January 27, 1975. The trial began on February 24, 1975, and ended with a judgment favorable to the Grays on July 31, 1975. The instant suit was filed January 28, 1976.

It has been held that a contract can exist whether expressed or implied and that the latter arises from the acts and conducts of the parties. In the instance of an implied contract, the issue of mutual assent is a question of fact to be inferred from the surrounding circumstances. The theory is that a course of dealing between the parties can imply a meeting of the minds. *Haws & Garrett General Contractors, Inc. v. Gorbett Brothers Welding Co.*, 480 S.W.2d 607 (Tex.Sup.1972). In the present case, the acceptance of cotton seed on credit and the payment for the seed over a ten-year period is proof of the Grays' agreement to pay for the seed advanced on credit.

The issue remaining unresolved, however, is at what time did this debt become due. The Supreme Court in the recent decision of *Nelson v. Union Equity Co-operative Exchange*, 20 Tex.Sup.Ct.J. 237 (March 19, 1977) stated that a farmer is a merchant as defined by the Texas Business and Commerce Code, thus making the provision of that Code applicable to farmers. Tex.Bus. & Comm.Code Ann. § 2.208(a) (1968) provides:

"Course of Performance or Practical Construction

(a) Where the contract for sale involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection shall be relevant to determine the meaning of the agreement."

In the present case, we have a ten-year period to look to in determining when payment for the seed was due or matured. The Grays accepted cotton seed on credit from Palmetal over this period. Payment for this seed along with the ginning cost was taken out of money paid the ginner by the purchaser of the cotton.

This extension of credit by Palmetal was an inducement offered by the gin to the

Grays in anticipation that they would gin with Palmetal. Palmetal was, however, fully aware that the Grays were under only a limited duty to gin with it. The contract for sale of cotton entered into by the Grays allowed them to gin with any of the following gins: Palmetal Gin, Elrod, E. Rio Hondo, and Harlingen Gin Company. Therefore, the plain meaning of this ten-year course of dealing was that the debt for seed as contracted for was not due until the Grays sold their cotton. The Grays by ginning with Elrod did no more than act pursuant to the rights granted them by contract. This action involved no notice to Palmetal that the debt was mature. *Kaspar v. Keller*, 466 S.W.2d 326 (Tex.Civ.App. —Waco 1971, writ ref'd n.r.e.).

Thus, the debt was not mature until after the Grays sold their cotton. The cotton was not sold until after a hearing on the merits of the first lawsuit. Therefore, Palmetal was not barred, the debt being unmatured. *Denbina v. City of Hurst, supra; Sewall Paint & Glass Co. of Texas v. Booth Lumber & Loan Co.*, 34 S.W.2d 650 (Tex.Civ.App.—Dallas 1930, affirmed, 50 S.W.2d 793 (Tex.Comm'n App.1932).

The judgment of the trial court is affirmed.