INGERSOLL–RAND COMPANY,
et al., Petitioners,

v.

VALERO ENERGY CORPORATION,
et al., Respondents.

No. 97–1168.

Supreme Court of Texas.

Argued Oct. 21, 1998.

Decided June 24, 1999.

Opinion On Rehearing Aug. 26, 1999.

Rehearing Overruled Sept. 23, 1999.

204

John B. Shely, Houston, Audrey Mullert
Vicknair, Roberta Shellum Dohse, Corpus
Christi, Dimitri Zgourides, Kendall M.
Gray, Joseph A. Katarincic, Houston, Paul
W. Nye, Harvey Ferguson, Jr., Corpus
Christi, for Petitioners.

Thomas H. Watkins, C.A. Davis, Austin, Gilberto Hinojosa, Brownsville, James K. McClendon, Elizabeth G. Bloch, Austin, for Respondents.

Justice ENOCH delivered the opinion for a unanimous Court.

Valero[1] sued Kellogg[2] and Ingersoll–Rand[3] for damages caused by malfunctioning equipment. Kellogg and Ingersoll–Rand installed the equipment during an expansion of Valero's oil refinery. Kellogg was the general contractor on the expansion, and Ingersoll–Rand was one of Kellogg's subcontractors. Both Kellogg and Ingersoll–Rand defended by asserting that certain indemnification and hold-harmless provisions in the Valero–Kellogg contract applied. The trial court concluded that the contract's indemnification provisions were enforceable and granted interlocutory summary judgment for Kellogg and Ingersoll–Rand. The court then severed that part of the case, so that Valero could appeal the summary judgment. The court of appeals affirmed, and that judgment is now final.[4]

During that appeal, the trial court abated the remaining claims. After the abatement was lifted, Kellogg and Ingersoll–Rand moved for summary judgment, seeking attorney's fees under the indemnity provisions upheld in *Valero I.* Valero filed its own motion for summary judgment, asserting that Kellogg's and Ingersoll–Rand's claims for attorney's fees were compulsory counterclaims barred by *res judicata* and by the statute of limitations.

The trial court granted Valero summary judgment. The court of appeals affirmed.[5]

The pivotal question in this case is when does an indemnitee's contractual claim for indemnification mature for purposes of the compulsory counterclaim rule. We adhere to the longstanding rule that a claim based on a contract that provides indemnification from liability does not accrue until the indemnitee's liability becomes fixed and certain. Applying this rule, we conclude that Kellogg's and Ingersoll–Rand's indemnity claims did not accrue until the trial court's rendition of summary judgment in *Valero I.* Accordingly, neither *res judicata* nor limitations bar Kellogg's and Ingersoll–Rand's claims. We reverse the court of appeals' judgment and remand to the trial court for further proceedings.

## Valero I

Valero sued Kellogg in 1986 over mechanical malfunctions allegedly resulting from Kellogg's flawed installation of refinery equipment. Valero pleaded fraudulent misrepresentation, breach of contract, violations of the Texas Deceptive Trade Practices Act,[6] breach of implied and express warranties, products liability, negligence, gross negligence, and intentional misconduct. Valero added Ingersoll–Rand as a defendant in 1989, after a piece of equipment supplied by Ingersoll–Rand exploded. The suit eventually came to include a host of cross-claims, counterclaims, and third-party claims not at issue here.

Kellogg and Ingersoll–Rand answered Valero's petition, asserting that the contract's indemnity provision barred Valero's

1. Valero Energy Corp. appears individually and as parent corporation of Valero Refining & Marketing Co. Valero Refining & Marketing Co. (formerly known as Saber Energy, Inc.) appears individually and as parent corporation of Valero Refining Co. Valero Refining Co. (formerly known as Saber Refining Co.) appears individually. We refer to these respondents as "Valero."

2. We refer to petitioners, M.W. Kellogg Co., M.W. Constructors, Inc., M.W. Kellogg Constructors, Inc., Kellogg Rust Synfuels, Inc., and Henley/MWK Holdings, Inc., as "Kellogg."

3. We refer to petitioners, Ingersoll–Rand Co., and Dresser–Rand Co., as "Ingersoll–Rand."

4. *See Valero Energy Corp. v. Kellogg Constr. Co.,* 866 S.W.2d 252 (Tex.App.—Corpus Christi 1993, writ denied) ("*Valero I* ").

5. *See* 953 S.W.2d 861 ("*Valero II* ").

6. *See* TEX. BUS. & COM.CODE § 17.46.

claims. Both relied on the following contract provision:

> 6.8 OWNER [Valero] shall release, defend, indemnify and hold harmless CONTRACTOR [Kellogg], its subcontractors [Ingersoll–Rand] and affiliates and their employees performing services under this Agreement against all claims, liabilities, loss or expense, including legal fees and court costs in connection therewith, arising out of or in connection with this Agreement or the Work to be performed hereunder, including losses attributable to CONTRACTOR'S negligence, to the extent CONTRACTOR is not compensated by insurance carried under this ARTICLE....

Valero replied that the contract's indemnity provision was unenforceable as against public policy. On this issue, each side filed competing motions for summary judgment.

The trial court granted Kellogg's and Ingersoll–Rand's motions for summary judgment, denied Valero's motion, and rendered judgment that Valero take nothing on its claims against Kellogg and Ingersoll–Rand. That matter was severed, and the remaining issues were abated pending appeal. Valero appealed, and the court of appeals affirmed the trial court's judgment on June 30, 1993.[7] This Court denied Valero's application for writ of error on April 20, 1994, and overruled its motion for rehearing of the application on June 2, 1994. That judgment is final.

### Valero II

One of the remaining abated claims was Kellogg's counterclaim for attorney's fees and costs incurred in defending against Valero. Kellogg filed the counterclaim between the time summary judgment was entered and the time the severance order was entered, but more than five years after Valero first sued Kellogg. After the trial court dissolved the abatement, Ingersoll–Rand initiated its own counterclaim against Valero for attorney's fees and costs. This claim was raised more than five years after Valero added Ingersoll–Rand as a defendant.

Kellogg and Ingersoll–Rand filed a joint motion for summary judgment asserting that the contract's indemnity provision, held enforceable in *Valero I*, entitled each to attorney's fees, court costs, and litigation expenses incurred in *Valero I*. Valero responded with a motion for summary judgment, asserting two affirmative defenses: (1) Kellogg and Ingersoll–Rand's counterclaims were compulsory, had not been asserted in *Valero I*, and were therefore precluded by *res judicata*; and (2) the four-year statute of limitations for breach of contract barred the claims.[8]

Without specifying grounds, the trial court granted Valero's motion for summary judgment, and denied Kellogg and Ingersoll–Rand's motion. The court of appeals affirmed, holding that Ingersoll–Rand's counterclaim was compulsory and barred by *res judicata*, and Kellogg's claim was barred by limitations.[9] Kellogg and Ingersoll–Rand each petitioned for review.

Because resolution of the issues we consider in Ingersoll–Rand's appeal disposes of issues presented by Kellogg's appeal, we consider Ingersoll–Rand's appeal first.

### Ingersoll–Rand's Appeal

The court of appeals held that Ingersoll–Rand's claim for attorney's fees was a compulsory counterclaim that Ingersoll–Rand should have brought in *Valero I*; and, therefore, *res judicata* barred the claim in *Valero II*. We disagree.

■ *Res judicata* prevents parties and their privies from relitigating a cause of action that has been finally adjudicated by a competent tribunal.[10] Also precluded

---

7. *See Valero I,* 866 S.W.2d 252.

8. *See* TEX. CIV. PRAC. & REM CODE § 16.004(a)(3).

9. 953 S.W.2d at 866, 868.

10. *See Getty Oil Co. v. Insurance Co. of N. Am.,* 845 S.W.2d 794, 798 (Tex.1992) (citing *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 630 (Tex.1992)), *cert denied,* 510 U.S.

are claims or defenses that, through diligence, should have been litigated in the prior suit but were not.[11] The doctrine is intended to prevent causes of action from being split, thus curbing vexatious litigation and promoting judicial economy.[12] *Res judicata*, however, does not bar a former defendant who asserted no affirmative claim for relief in an earlier action from stating a claim in a later action that could have been filed as a cross-claim or counterclaim in the earlier action, unless the claim was compulsory in the earlier action.[13] Here, the court of appeals concluded that Ingersoll–Rand's claim was compulsory.

■ But a counterclaim is compulsory only if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction.[14] A claim having all of these elements must be asserted in the initial action and cannot be asserted in later actions.[15]

To meet its summary judgment burden on the affirmative defense that Ingersoll–Rand's claim was compulsory and barred by *res judicata*, Valero had to prove that Ingersoll–Rand's counterclaim satisfied each element above. Ingersoll–Rand asserts that its indemnity claim for attorney's fees was not compulsory because the claim could not have become mature before the trial court's rendition of summary judgment in *Valero I*.

■ A claim is mature when it has accrued.[16] To determine the correct accrual date of an indemnity claim we look to the contract's indemnity provision. There are two types of indemnity agreements, those that indemnify against liabilities and those that indemnify against damages.[17] Broad language, like that in this contract, that holds the indemnitee "harmless" against "all claims" and "liabilities" evidences an agreement to indemnify against liability.[18] Such provisions entitle the indemnitee to recover when the liability becomes fixed and certain, as by rendition of a judgment, whether or not the indemnitee has yet suffered actual damages, as by payment of a judgment.[19]

820, 114 S.Ct. 76, 126 L.Ed.2d 45 (1993); *Gracia v. RC Cola–7–Up Bottling Co.*, 667 S.W.2d 517, 519 (Tex.1984); *Texas Water Rights Comm'n v. Crow Iron Works*, 582 S.W.2d 768, 771–72 (Tex.1979).

11. See *Barr*, 837 S.W.2d at 629.

12. See *id.*; *Jeanes v. Henderson*, 688 S.W.2d 100, 103 (Tex.1985).

13. See Tex.R. Civ. P. 97(a); *Valley Forge Ins. Co. v. Ryan*, 824 S.W.2d 236, 238–39 (Tex. App.—Fort Worth 1992, no writ); *Lesbrookton, Inc. v. Jackson*, 796 S.W.2d 276, 281 (Tex.App.—Amarillo 1990, writ denied); *Swiss Ave. Bank v. Slivka*, 724 S.W.2d 394, 396 (Tex.App.—Dallas 1986, no writ).

14. See Tex.R. Civ. P. 97(a) & (d); *Wyatt v. Shaw Plumbing Co.*, 760 S.W.2d 245, 247 (Tex.1988); *see also Denbina v. City of Hurst*, 516 S.W.2d 460, 463 (Tex.Civ.App.—Tyler 1974, no writ) ("Under Sections (a) and (d) of [Rule 97] a party is not required to file a counterclaim unless the claim is mature at the time the answer is due.") (citing McDonald, *Texas Civil Practice*, § 7.49, p. 285 (1970)).

15. See *Wyatt*, 760 S.W.2d at 247.

16. See, e.g., *Ryan*, 824 S.W.2d at 239; *Stille v. Colborn*, 740 S.W.2d 42, 44 (Tex.App.—San Antonio 1987, writ denied); *Gray v. Kirkland*, 550 S.W.2d 410, 411 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.).

17. See *Tubb v. Bartlett*, 862 S.W.2d 740, 750 (Tex.App.—El Paso 1993, writ denied); *Russell v. Lemons*, 205 S.W.2d 629, 631 (Tex.Civ. App.—Amarillo 1947, writ ref'd n.r.e.).

18. See, e.g., *Tubb*, 862 S.W.2d at 750; *Bernard v. L.S.S. Corp.*, 532 S.W.2d 409, 410 (Tex.Civ. App.—Austin 1976, writ ref'd n.r.e.).

19. See *Tubb*, 862 S.W.2d at 750; *Russell*, 205 S.W.2d at 631.

Valero's suit presented the rather anomalous situation of an indemnitor (Valero) acting concurrently as the plaintiff seeking damages from the indemnitee (Ingersoll–Rand). The more common scenario for an indemnification dispute involves three separate and distinct parties: plaintiff (party one), indemnitee (party two), and indemnitor (party three). Despite the unusual factual setting here, we find no persuasive reason not to apply the longstanding rule that a claim under a liability indemnification clause does not accrue, and thus is not mature, until the indemnitee's liability to the party seeking damages becomes fixed and certain.[20]

■ When Ingersoll–Rand was added as a defendant in *Valero I*, it was entirely conceivable that Ingersoll–Rand might sustain extensive liabilities because of Valero's claims for damages. And Ingersoll–Rand, presumably, would have sought indemnification for all such liabilities under the contract's indemnity provision. Any claim Ingersoll–Rand could have asserted, however, could not have accrued until all of Ingersoll–Rand's potential liabilities to Valero became fixed and certain by rendition of a judgment.

In *Valero I*, the trial court rendered summary judgment for Ingersoll–Rand that Valero take nothing on its claims for damages. That judgment was signed on October 25, 1991. Ingersoll–Rand's liabilities became fixed and certain at zero for Valero's tort, DTPA, and contract damages plus the total amount of attorney's fees and costs incurred in defending against Valero when summary judgment

was rendered in *Valero I*.[21] Because Valero demonstrated no time earlier than the date of judgment in *Valero I* by which Ingersoll–Rand's liabilities became fixed and certain, the third element of the compulsory counterclaim rule—maturity of the claim—was not satisfied.

Our reasoning is bolstered by commentary on the analogous federal rule. The Texas compulsory counterclaim rule is based on Rule 13 of the Federal Rules of Civil Procedure.[22] In commenting on Federal Rule 13(a)'s condition that a claim must be mature in order to be compulsory, Professors Wright and Miller state:

> This exception to the compulsory counterclaim requirement necessarily encompasses a claim that depends upon the outcome of some other lawsuit and thus does not come into existence until the action upon which it is based has terminated. For example, ... *a claim for contribution cannot be compulsory in the action whose judgment is the subject of the contribution suit.*[23]

Likewise, an indemnity claim cannot be compulsory in the action whose judgment is the subject of the indemnity suit. In a suit for either contribution or indemnity the injury upon which suit might be based does not arise until some liability is established. In this case, as in a contribution claim against a joint tortfeasor, liability could not have been established until judgment was rendered.

The court of appeals relied heavily on *Getty Oil v. Insurance Company of North America*[24] in reaching a different conclusion. In *Getty* we stated:

---

**20.** *See Humana Hosp. Corp. v. American Med. Sys., Inc.,* 785 S.W.2d 144, 145 (Tex.1990); *Pope v. Hays,* 19 Tex. 375, 379–80 (1857); *Tubb,* 862 S.W.2d at 750; *Holland v. Fidelity & Deposit Co.,* 623 S.W.2d 469, 470 (Tex. App.—Corpus Christi 1981, no writ); *Pate v. Tellepsen Constr. Co.,* 596 S.W.2d 548, 552 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Bernard,* 532 S.W.2d at 410; *Texas Auto Servs., Inc. v. Kemp,* 478 S.W.2d 646, 648 (Tex.Civ.App.—Austin 1972, no writ); *Russell,* 205 S.W.2d at 631.

**21.** *See, e.g., Pope,* 19 Tex. at 379; *Tubb,* 862 S.W.2d at 750; *Kemp,* 478 S.W.2d at 648; *Russell,* 205 S.W.2d at 631.

**22.** *See* Tex.R. Civ. P. 97, Notes and Comments.

**23.** 6 Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1411, at 82–84 (2d ed.1990) (footnotes omitted) (emphasis added).

**24.** 845 S.W.2d 794 (Tex.1992).

The contingent nature of these claims, however, does not preclude the operation of res judicata. We held in *Barr* [*v. Resolution Trust Corp.*] that "[a] subsequent suit will be barred if it arises out of the same subject matter of a previous suit and which, through the exercise of diligence, could have been litigated in a prior suit." 837 S.W.2d at 631. Getty could have asserted its present claims in the [previous] suit, with their resolution being contingent on the plaintiffs' claims.[25]

In all respects, we stand by *Getty*. But *Getty's* language cannot be applied without considering the case's factual context.

In *Getty* we held that an indemnitee (Getty) was barred by *res judicata* from maintaining a claim against an indemnitor (NL Industries), because Getty had sought the same relief under a different theory in an earlier suit. In the earlier wrongful death suit Getty and NL were co-defendants, and Getty chose to file a permissive cross-claim against NL based on indemnification language in their contract. By taking this action Getty put itself in the same position, for purposes of *res judicata*, as a plaintiff filing a cause of action for damages. We specifically held this to be so in *Getty*.[26] As the plaintiff for *res judicata* purposes, Getty was subject to the general rule of *res judicata* that any cause of action that arises out of the same subject matter should, if practicable, be litigated in the same lawsuit.[27] In the second suit, Getty was the actual plaintiff. Its claim again involved asserting indemnity provisions as the basis for damages. Because Getty could have asserted those claims in the earlier action but did not, *res judicata* barred the claims.

◼ We face a different situation here. In relation to Valero, Ingersoll–Rand was a defendant only and made no affirmative claims for relief in *Valero I*. Ingersoll–Rand, like Getty, could have stated a permissive claim against Valero, but it did not. This fact is significant because of the rule we pointed out earlier: the doctrine of *res judicata* does not bar claims against the plaintiff from an earlier suit by a defendant from the earlier suit, unless the later claims were compulsory in the earlier suit. Because Ingersoll–Rand, unlike Getty, made no affirmative claims in the first suit, *res judicata* does not bar Ingersoll–Rand's later claims unless they were compulsory. But, as we explained earlier, the compulsory counterclaim elements were not met by Ingersoll–Rand's potential claims in *Valero I*. Thus, Ingersoll–Rand's claims in *Valero II* are not barred.

As the court of appeals points out, and as we said in *Getty*, we have held that an indemnitee may bring a claim against an indemnitor before the judgment is assigned against the indemnitee.[28] That is indeed what Getty did. We allow such claims to be brought, in the interest of judicial economy, as an exception to the accrual rule for indemnity claims.[29] Such claims are contingent on accrual. But we have never held that an indemnitee must state such claims in the initial suit to preserve them. As we specifically noted in *Getty*, such claims are permissive.[30] None of the cases we cited in *Getty*, for the

---

25. *Id.* at 799.

26. *See id.* at 800 ("The cross-claimant [Getty] becomes a plaintiff for *res judicata* purposes, and is required to assert all claims against the cross-defendant arising from the subject matter of the original cross-claim.").

27. *See Barr*, 837 S.W.2d at 630.

28. *See Getty*, 845 S.W.2d at 799 (citing *Gulf, Colo. & Santa Fe Ry. Co. v. McBride*, 159 Tex. 442, 322 S.W.2d 492, 495 (1958); *Mitchell's, Inc. v. Friedman*, 157 Tex. 424, 303 S.W.2d 775, 779 (1957); *K & S Oil Well Serv., Inc. v. Cabot Corp.*, 491 S.W.2d 733, 739 (Tex.Civ. App.—Corpus Christi 1973, writ ref'd n.r.e.)).

29. *See id.* ("Forcing the indemnity suit to wait for judgment in the liability suit 'would contravene the policy of the courts to encourage settlements and to minimize litigation.' ") (citation omitted).

30. *See id.*

proposition that an indemnitee may file a claim for indemnification before judgment is rendered, stand for the proposition that contingent indemnity claims must be brought in the initial action. Rather, the cases cited in *Getty* hold that it is merely permissive for such claims to be brought before judgment in the initial action.[31]

The fact that attorney's fees and costs were the only liabilities for which Ingersoll–Rand was eventually entitled to seek indemnity does not change our conclusion. It is true that a counterclaim for attorney's fees will in most cases be compulsory.[32] We do not dispute the legal basis of such a statement because a claim for attorney's fees will generally satisfy the elements of the compulsory counterclaim rule. However, an indemnity claim based on an agreement to indemnify against liabilities has different characteristics than a simple claim for attorney's fees. The attorney's fees are certain to be incurred as soon as an attorney is retained, while liabilities covered by an indemnity agreement in any given case may never be incurred depending on the outcome of the case. This difference is significant.

Consider *Fidelity Mutual Life Insurance Company v. Kaminsky*,[33] another case upon which the court of appeals relied. In *Kaminsky* the court concluded that a contractual claim for attorney's fees, even though contingent on the outcome of the suit, was mature and compulsory.[34] The contractual provision on which Dr. Kaminsky relied established his contractual right to attorney's fees contingent on the result of the suit, but it did not indemnify him against other liabilities generally. It was not an indemnification agreement.

Thus, the general rule that a cause of action accrues when facts come into existence that authorize the claimant to seek a judicial remedy applied in *Kaminsky*.[35] Dr. Kaminsky's claim for attorney's fees accrued when he first incurred fees.

■ As we have explained, a specific accrual rule applies to claims for indemnification: an indemnity claim does not accrue until all of the potential liabilities of the indemnitee become fixed and certain. This specific rule is consistent with the general accrual rule. The facts that entitle an indemnitee to seek indemnification through suit come into existence when the indemnitee's liabilities become fixed and certain by judgment.

While attorney's fees will almost always be a component of an indemnitee's total liabilities, we decline to hold that recovery for the attorney's fees component of an indemnitee's potential liability must be pursued before and separate from the remaining components. An indemnification claim does not accrue until all of the indemnitee's liabilities become fixed and certain.

Because we resolve Valero's *res judicata* claim by applying the compulsory counterclaim rule, we need not consider Ingersoll–Rand's assertion that Valero waived, by Rule 11 agreement,[36] the right to assert *res judicata.*

■ Valero also asserted in its motion for summary judgment that the four-year statute of limitations for contract claims barred Ingersoll–Rand's claims for attorney's fees.[37] To prevail on the limitations affirmative defense, Valero had the burden of conclusively proving when the cause of action accrued.[38] Ingersoll–Rand's claim

---

**31.** *See id.*

**32.** *See, e.g., Fidelity Mut. Life Ins. Co. v. Kaminsky*, 820 S.W.2d 878, 882 (Tex.App.—Texarkana 1991, writ denied).

**33.** *Id.*

**34.** *Id.*

**35.** *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex.1990).

**36.** *See* Tex.R. Civ. P. 11.

**37.** *See* Tex. Civ. Prac. & Rem.Code § 16.004(a)(3).

**38.** *See KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748

did not accrue until October 25, 1991, the date that the trial court signed summary judgment in *Valero I*.[39] Because Ingersoll–Rand filed its claim for attorney's fees on September 16, 1994, less than four years after the trial court's judgment, the four-year statute of limitations does not bar Ingersoll–Rand's claim.

### Kellogg's Appeal

Our conclusions above largely dispose of Valero's claims against Kellogg. Like Ingersoll–Rand, Kellogg's claim for attorney's fees did not accrue until summary judgment was rendered in *Valero I*. Consequently, Kellogg's claim was not compulsory. In any event, Kellogg filed its claim one month before severance in the original action while summary judgment was still interlocutory. As such, the claim was properly preserved through the severance order for later adjudication, and *res judicata* does not bar it.

As to Valero's statute of limitations defense, limitations could not have began to run before Kellogg's indemnity claim became fixed and certain. Like Ingersoll–Rand, Kellogg's claim did not become fixed and certain until judgment was signed in *Valero I*. Kellogg filed its claim on November 20, 1991, less than a month after summary judgment was signed in *Valero I*, and well within the four-year limitations period.

 The court of appeals, however, held that limitations began to run on Kellogg's indemnification claim when Valero filed suit on July 11, 1986, because Valero's suit acted as a repudiation of the contract's indemnity provision. It is true that limitations may begin to run upon a promisor's anticipatory repudiation, but only if the repudiation is adopted by the nonrepudiating party.[40] Valero contends that its petition in *Valero I* was an unequivocal repudiation of its duty to indemnify. However, the effect of such an anticipatory repudiation is to give the nonrepudiating party the option of treating the repudiation as a breach or ignoring the repudiation and awaiting the agreed upon time of performance.[41] Thus, even if Valero's petition acted as an unequivocal repudiation, an issue we do not decide, Kellogg was still entitled to await the time of performance and sue only after an actual breach of the indemnity clause. Valero did not breach its agreement to indemnify Kellogg until Kellogg made a demand for indemnity, and Valero refused to perform. It was only at this time that the statute of limitations began to run.

The record reveals that Kellogg made its demand for attorney's fees on November 20, 1991, and filed its claims for attorney's fees on the same day. Thus, even if Valero repudiated the contract, Kellogg still satisfied the statute of limitations.

### Conclusion

Kellogg and Ingersoll–Rand's claims for attorney's fees were not compulsory counterclaims and are not barred by *res judicata*. Further, the claims were filed within the applicable limitations period. Accordingly, we reverse the court of appeals' judgment and remand to the trial

(Tex.1999); *Burns v. Thomas*, 786 S.W.2d 266, 267 (Tex.1990); *Willis v. Maverick*, 760 S.W.2d 642, 646 (Tex.1988).

**39.** *See City of San Antonio v. Talerico*, 98 Tex. 151, 81 S.W. 518, 520 (1904); *Koonce v. Quaker Safety Prod. & Mfg. Co.*, 798 F.2d 700, 706–13 (5th Cir.1986) (discussing application of Texas law); *see also* Maurice T. Brunner, Annotation, *When Statute of Limitations Commences to Run Against Claim for Contribution or Indemnity Based on Tort*, 57 A.L.R.3d 867, 875–76 (1974).

**40.** *See Hubble v. Lone Star Contracting Corp.*, 883 S.W.2d 379, 382 (Tex.App.—Fort Worth 1994, writ denied).

**41.** *See Murray v. Crest Constr., Inc.*, 900 S.W.2d 342, 344 (Tex.1995); *Greenwall Theatrical Circuit Co. v. Markowitz*, 97 Tex. 479, 79 S.W. 1069, 1071 (1904); *America's Favorite Chicken Co. v. Samaras*, 929 S.W.2d 617, 626 (Tex.App.—San Antonio 1996, writ denied).

court for further proceedings consistent with this opinion.

Justice OWEN did not participate in the decision.

## ON REHEARING

■ Like Kellogg, which filed its claim for attorney's fees in *Valero I* after judgment was rendered but before severance was granted, Valero filed an amended petition. Unlike Kellogg, which for the first time asserted a claim for affirmative relief, Valero repackaged its original tort claim upon which the adverse judgment had been rendered as a contract claim. Valero urged in the court of appeals by conditional cross-point that if *res judicata* did not bar Kellogg's claim, then likewise, *res judicata* would not bar its breach of contract claim. The court of appeals, because of its disposition of the appeal, did not consider Valero's cross-point.[1] But because we are reversing and remanding this case to the trial court, Valero, on motion for rehearing, reminds us of its cross-point and we consider it now.[2]

Valero's cross-point has no merit. Valero's late-filed amended petition circumvents the trial court's adverse ruling in *Valero I*. In *Valero I*, Valero attacked the validity of the indemnity agreement. By its late-filed amended petition, Valero recast its attack on the indemnity provision as a breach of contract claim, which is classic claim-splitting. This, Valero cannot do.[3] The subject of the judgment in *Valero I* was Valero's liability under the indemnity provision; it cannot escape the effect of that judgment through a late-filed amended petition, whether there was a severance order or not. The trial court properly concluded that Valero's "new" breach of contract claim is barred by *res judicata*.

1. *See* 953 S.W.2d at 869.

2. *See* Tex.R.App. P. 53.4.

Our opinion and judgment of June 24, 1999 remain unchanged.

3. *See* Restatement (Second) of Judgments §§ 24, 25(1); *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 629–31 (Tex.1992).