NO. 07-08-0450-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

FEBRUARY 2, 2010
_____

CORNWALL PERSONAL INSURANCE AGENCY, INC.,
RONALD J. HETTLER, AND ROBIN HETTLER, APPELLANTS

v.

ROBERT N. NEBB, MICHAEL CARPER, AND THE LAW
OFFICES OF MICHAEL CARPER, P.C., APPELLEES

_____

FROM THE 237TH DISTRICT COURT OF LUBBOCK COUNTY;

NO. 2006-537,428; HON. SAM MEDINA, PRESIDING
_____

Before CAMPBELL and PIRTLE, JJ., and BOYD, S.J.[1]

**MEMORANDUM OPINION**

This appeal arises from a take-nothing summary judgment in favor of appellees Robert N. Nebb (Nebb), Michael H. Carper, and the Law Offices of Michael H. Carper, P.C. (Carper), in a suit filed by appellants Cornwall Personal Insurance Agency, Inc. (CPI), and Ronald J. Hettler and Robin Hettler against appellees. In the suit, appellants alleged that Nebb was guilty of legal malpractice and violations of the Texas Deceptive

---

[1] John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon).

1

Trade Practices Act (DTPA) for which Carper was vicariously liable because at all relevant times Nebb was employed by Carper. Appellees initially responded to the suit by a general denial and by asserting affirmative defenses including *res judicata* and judicial estoppel.

Subsequent to the filing of their answer, appellees filed a motion seeking summary judgment. As grounds for that motion, they argued: 1) *res judicata*, as a matter of law, barred all claims; 2) judicial estoppel, as a matter of law, barred all claims; 3) the statute of limitations and the professional services exemption barred the DTPA claims; 4) as a matter of law, Nebb was not negligent with regard to certain alleged failures to object to jury questions; and 5) as a matter of law, there was no proximate cause on appellants' allegations that Nebb failed to preserve error on matters relating to a *Daubert/Robinson* challenge to expert witness testimony and to jury questions submitted in the course of that trial. Prior to the time the summary judgment motion was set for hearing, appellants non-suited their DTPA claims. After the hearing, and without specifying its reasons for doing so, the trial court granted the motion and rendered a take-nothing summary judgment.

## Background

In the 1997 suit underlying the one giving rise to this appeal, William David Brenholtz filed suit against CPI and the Hettlers (the Brenholtz suit) seeking the recovery of various damages suffered as the result of an alleged wrongful termination of his employment relationship with them. The ensuing jury trial resulted in a March 22, 2002 judgment against the Hettlers and CPI.

2

Subsequent to the judgment, and on April 12, 2002, CPI filed a Chapter 11 bankruptcy proceeding, as did the Hettlers on April 15, 2002. In doing so, they were assisted by Nebb in the selection and employment of their bankruptcy counsel. In those proceedings, appellees filed a proof of claim for the unpaid balance of Nebb's fees for representing appellants in the Brenholtz suit which resulted in the payment of those fees. In the bankruptcy schedules listing all of appellants' assets and liabilities, although they included a potential legal malpractice claim against another attorney who had represented them in the Brenholtz suit prior to Nebb's employment in that suit, they did not list any potential claim against any appellees. Ultimately, the bankruptcy court approved reorganization plans submitted by appellants which resulted in the payment of the Brenholtz judgment and the ultimate closure of the Hettlers' bankruptcy on July 26, 2006, and that of CPI on June 24, 2004.

In July of 2005, with pleadings signed by Nebb, appellants filed a bill of review proceeding in the 364th District Court of Lubbock County in which they sought a review of the Brenholtz suit on the basis that, in a related lawsuit against the Travelers Insurance Company, they had discovered information that had not been revealed by Brenholtz, and which, they alleged, would have made a difference in the original suit. Appellee Nebb represented appellants in that proceeding. In that suit, despite Nebb's testimony that such an imposition was not justified, sanctions were assessed against appellants on the basis that appellants had not exercised due diligence in bringing the newly discovered evidence to the attention of the court.

The suit against appellees, which gives rise to this appeal, was filed on December 12, 2006, over four years after the trial of the Brenholtz suit, two years after the close of

the CPI bankruptcy, and some six months after the close of the Hettler bankruptcy. Appellants assert the suit could not have been filed sooner because it was not until the fall of 2006, when they consulted another attorney, that they then learned that some of the alleged acts and omissions of Nebb in the Brenholtz suit might constitute malpractice. They also argue that until that time, they had reasonably relied upon Nebb's representations that he had done nothing that led to the adverse judgment in the Brenholtz case but that they might have a malpractice claim against another attorney who earlier represented them in the suit.

## Discussion

In pursuing their appeal, appellants present six issues for our review. However, because it is determinative of this appeal, it is only necessary for us to discuss their first issue. In that issue, appellants argue the trial court erred in rendering summary judgment on the basis of *res judicata.*

The standards by which summary judgments are reviewed are by now axiomatic. When reviewing a summary judgment, the reviewing court takes as true all evidence favorable to the nonmovant, and resolves any doubts and indulges any reasonable inferences in the nonmovant's favor. *South Plains Switching, Ltd. v. BNSF Ry. Co.,* 255 S.W.3d 690, 699 (Tex. App.–Amarillo 2008, pet. denied). The summary judgment is reviewed *de novo*, and when the trial court's order does not specify the ground or grounds relied upon for its ruling, it will be affirmed if any of the theories advanced are meritorious. *Id.*

### *Res Judicata*

4

Appellees argue that any legal malpractice claim against them because of Nebb's representation of appellants in the Brenholtz suit is barred by the *res judicata* doctrine. In doing so, they point out that they filed a proof of claim in the bankruptcies seeking to collect unpaid legal fees for services rendered by Nebb in the Brenholtz suit. That being true, they argue, any claims for legal malpractice were compulsory counterclaims in those bankruptcies, and appellants' failure to assert any such claim in response to Nebb's quest for payment of legal services rendered in those suits precludes them from making any such claim now. Parenthetically, appellees acknowledge that inasmuch as they presented a traditional summary judgment motion, they carried the burden of proving each element of *res judicata* as a matter of law. *Joachim v. Travelers Ins. Co.,* 279 S.W.3d 812, 815 (Tex. App.–Amarillo 2008, pet. granted).

*Res judicata*, sometimes referred to as "claim preclusion," prevents parties and their privies from relitigating a cause of action that has been fully adjudicated as well as any claims or defenses that through diligence should have been litigated but were not. The doctrine is intended to prevent causes of action from being split, thus curbing vexatious litigation and promoting judicial economy. *Ingersoll-Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 206-07 (Tex. 1999). Even so, the doctrine does not bar a former defendant who did not assert an affirmative claim for relief in an earlier action from stating a claim in a later action that could have been filed as a cross-claim or counterclaim in the earlier action, unless the claim inclusion was compulsory in the earlier action. *Id.* at 207.

In supporting their claim that *res judicata* is applicable, appellees point to the undisputed facts that a proof of claim for unpaid attorney's fees was filed in the

5

bankruptcies, that those unpaid attorney's fees related to work performed by Nebb in defending the Brenholtz lawsuit, that no contest was made to the payment of that claim, that the bankruptcy court authorized the payment of those fees, and that they were paid by appellants.

Noting the Fifth Circuit Court of Appeals holding *In re Intelogic Trace, Inc.,* 200 F.3d 382 (5th Cir. 2000), appellants recognize that *res judicata* of a compulsory counterclaim may apply to claims made in bankruptcy. However, in doing so they point out that court's *caveat:*

> Even if the two actions are the same under the transactional test, *res judicata* does not bar this action unless [plaintiff] could and should have brought its malpractice claims in the former proceedings.
>
> *       *       *
>
> In reaching our determination, we consider whether and to what extent [plaintiff] had actual or imputed awareness prior to the fee hearing of a real potential for claims against Ernest & Young such as those asserted by the Trustee and whether the bankruptcy court possessed procedural mechanisms that would have allowed   [plaintiff] to assert such claims.

*Id.* at 388.

In considering the *Intelogic* court's teaching, appellants argue that while the bankruptcy court did possess procedural mechanisms that would have allowed them to assert malpractice claims against appellees, they had presented fact issues as to whether they had actual or implied notice of a real potential for claims against appellees prior to the bankruptcy court's plan confirmations in October 2003. Thus, it was necessary to determine those fact questions before it could be determined if their claim against appellees for legal malpractice was a compulsory counterclaim in the bankruptcy

6

proceeding. That being so, they contend, any application by the trial court of the *res judicata* doctrine would constitute reversible error*.*

Appellants' argument requires us to examine in some detail the implications of Texas Rule of Civil Procedure 97(a), the compulsory counterclaim rule. A counterclaim is compulsory if 1) it arises out of the transaction or occurrence that gives rise to the opposing party's claim; 2) it is mature and owned by the counter-claimant; 3) it is against an opposing party in the same capacity; 4) it does not require third parties who cannot be brought into the suit; 5) it is within the court's jurisdiction; and 6) it is not pending elsewhere. Tex. R. Civ. P. 97(a); *Wyatt v. Shaw Plumbing Co.,* 760 S.W.2d 245, 247 (Tex.1988); *South Plains Switching, Ltd. v. BNSF Ry. Co.,* 255 S.W.3d at 699. If a claim meets those elements, it must be asserted in the initial action and cannot be later raised. *Id.*

In the seminal case of *Ogletree v. Crates*, 363 S.W.2d 431, 435 (Tex. 1963), the court instructed that "[t]he rule of *res judicata* in Texas bars all litigation of all issues connected with a cause of action or defense which, with the exercise of diligence, might have been tried in a former trial, as well as those that were actually tried." Appellants argue that even if their legal malpractice claim would otherwise have been a compulsory counterclaim to appellees' bankruptcy court claim for attorney fees, because they have raised fact issues concerning when they knew, or in the exercise of reasonable diligence should have known that they had a cause of action against appellees, the "*Ogletree* rule" required determination of that question before the compulsory counterclaim rule would have come into play. They also contend that they had raised fact issues as to whether

7

their cause of action against appellees accrued long after appellees' claims for attorney's fees had been approved by the bankruptcy court. Thus, they argue, the compulsory counterclaim rule was not applicable and prevented any application of the *res judicata* doctrine to bar their legal malpractice claims.

In deciding appellants' due diligence and accrual arguments, we note the court's decision in *Bailey v. Travis*, 622 S.W.2d 143 (Tex. App.–Eastland 1981, writ ref'd n.r.e.). In that case, as we are here, the court was also considering three underlying cases[2] and questions as to implications of the compulsory counterclaim rule and imposition of *res judicata* by the trial court. Because that court's reasoning and disposition of those questions is instructive and determinative here, we must discuss that case at some length.

---

[2]The three cases involved here are: 1) the Brenholtz case during which the alleged malpractice occurred; 2) the bankruptcies in which the attorney's fees were approved; and 3) this case involving alleged legal malpractice.

In *Bailey,* the court opined that the question for its determination was whether a legal malpractice claim had "matured" so as to be a compulsory counterclaim in an earlier suit filed by an attorney against a former client for attorney's fees.   Like the case before us, *Bailey* involved three underlying cases.   In Bailey 1, Bailey had been represented by attorney William Travis (Travis) and the case had resulted in a judgment adverse to Bailey.   Following the trial, Bailey employed a different attorney to prosecute an appeal. Travis then sued Bailey (Bailey II), and recovered a judgment for attorney's services performed by him in Bailey I.   Bailey did not file a counterclaim urging legal malpractice in the Bailey II suit. Subsequently, Bailey sued Travis (Bailey III) seeking damages for alleged legal malpractice during the trial of Bailey I.   The trial court rendered summary judgment against Bailey in Bailey III which gave rise to the appeal discussed by the appellate court.

In its discussion, the appellate court noted that the narrow issue to be decided by it was whether Bailey's malpractice claim was "mature" when he was sued by Travis for attorney's fees in Bailey II.   If it was, the court observed, than the summary judgment was proper because Bailey had failed to file a compulsory counterclaim under Texas Rule of Civil Procedure 97(a).   *Id.* at 143-44.

In pursuing his appeal, Bailey contended that the malpractice claim was not mature at the time he answered in Bailey II, because Bailey I was on appeal and it was therefore unsettled as to what damages, if any, he might have suffered as a result of Travis' malpractice.   *Id.*   That argument and the facts underlying it are significantly similar to those advanced here by appellants.

In affirming the trial court's summary judgment, the appellate court opined that the maturity of a counterclaim was not "necessarily equivalent to 'accrual' of a malpractice cause of action for statute of limitations purposes." *Id.* at 144. Even so, it continued, Bailey had "clearly" suffered harm when the trial court judgment was entered against him in Bailey I and he was forced to appeal that decision, and it was not necessary that the full extent of the damages be known at that time. *Id.* Thus, the court concluded, it was apparent at the time he filed his answer in Bailey II, Bailey had been damaged or harmed as a result of the alleged malpractice and his claim for damages resulting from that alleged legal malpractice had ripened into an enforceable cause of action even though the full extent of his damages might not have been known. *Id.*

Likewise, in the case before us, appellants had clearly suffered harm when they suffered the adverse judgment in the Brenholtz suit. Thus, any right of action against appellees for legal malpractice had accrued at the time appellees made claims in the bankruptcy court for attorney's fees rendered in the Brenholtz suit. That being so, any legal malpractice claim by appellants became a compulsory counterclaim at that time. The failure to assert that compulsory counterclaim timely prevents it being raised again in the suit underlying this appeal.

Thus, the trial court correctly concluded that *res judicata* was applicable to appellants' claims here. That decision requires us to overrule appellants' first issue, and, because *res judicata* was properly applicable, it supports the trial court's judgment and obviates the necessity for discussion of appellants' other issues. The judgment of the trial court must be, and is, hereby affirmed.

10

John T. Boyd
Senior Justice