**AFFIRM; and Opinion Filed May 9, 2013.**



In The
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-01439-CV**

**LAFAYETTE ESCADRILLE, INC., Appellant**
**V.**
**CITY CREDIT UNION, Appellee**

**On Appeal from the 160th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-10-03243-L**

**MEMORANDUM OPINION**
Before Justices O'Neill, Francis, and Murphy
Opinion by Justice O'Neill

Appellant Lafayette Escadrille, Inc. appeals a summary judgment granted in favor of City Credit Union (CCU) on its claim for wrongful termination of a contract. In five issues, Lafayette generally contends the trial court erred in granting CCU's motion for summary judgment because the claim was not barred by a prior suit. For the following reasons, we affirm the trial court's judgment.

CCU is a financial institution that offers banking services to its members. In 2003, CCU and Lafayette entered into a contract in which Lafayette was to provide CCU with ATM and protection services. In 2007, disputes between the parties arose, including CCU's claim that Lafayette was making sales tax overcharges. On June 13, 2007, CCU sent Lafayette a formal notice of default. Lafayette did not cure the default within the thirty-days allowed for in the

contract, and on September 24, 2007, CCU sent Lafayette formal "Notice of Termination of Contract" notifying Lafayette CCU was terminating the contract effective immediately. CCU also sent Lafayette a letter directing it to take no further action in performance of the contract, it was to have no further access to CCU's ATMs, and to turn over all keys and combinations belonging to CCU. CCU cautioned Lafayette its failure to do so would be a considered a conversion of CCU's property

CCU then filed suit stating it had terminated the contract and seeking damages for, among other things, the overcharges. The following day, Lafayette remitted the overpayment, but demanded CCU pay the full unpaid balance on the agreement because the termination was wrongful. CCU rejected the payment for the overcharges.

On September, 18, 2008, after the time for filing counterclaims had expired under the trial court's scheduling order, Lafayette filed a motion seeking leave to file a counterclaim for wrongful termination of the contract. Lafayette alleged CCU would suffer no unfair surprise because the issues raised in the counterclaim were the same issues already before the trial court and had already been raised as defensive matters.

On May 7, 2009, CCU filed a motion for partial summary judgment on its claim for sales tax overcharges. In the motion, CCU claimed that Lafayette's attempt to cure the breach was too late and it had properly terminated the contract. In its response to the motion, Lafayette claimed CCU had neither given it proper notice of default nor an opportunity to cure before CCU terminated the contract and filed suit. Lafayette alleged it suffered damages in the amount of the unpaid balance remaining on the contract and sought an offset for such amount.

On June 11, 2009, the trial court granted summary judgment in favor of CCU for the sales tax overcharges. Meanwhile, Lafayette had yet to obtain a hearing on its previously filed motion for leave to file an amended counterclaim. The motion was heard on June 17, 2009, five

days before the then June 22, 2009 trial setting. The trial court denied the motion. The trial court stated it "may or might" reconsider the motion if the case was again reset. Lafayette presented evidence the case could not have proceeded on June 22 because it was a non-jury week and Lafayette had requested a jury trial.

Regardless, on June 19, 2009, CCU filed a notice of dismissal of its remaining claims. The trial court signed an order granting the dismissal, rendering the partial summary judgment final. According to Lafayette, CCU only dismissed the remaining claims to prevent Lafayette from obtaining leave to amend its pleadings to assert the counter-claim. Lafayette filed a notice of appeal, indicating it was appealing the partial summary judgment as well as the trial court's denial of its motion for leave to assert the counterclaim. However, Lafayette's notice of appeal was untimely and this Court dismissed the appeal for want of jurisdiction.

Shortly thereafter, in March 2010, Lafayette filed the instant suit for wrongful termination of the contract, based on the same conduct it sought to raise in the prior proceedings. CCU filed a traditional motion for summary judgment asserting, among other things, that Lafayette's claim was barred under the compulsory counterclaim rule and the doctrine of res judicata. The trial court granted CCU's motion. This appeal followed.

In its first and second issues, Lafayette asserts that its wrongful termination claim is not barred under the compulsory counterclaim rule or the doctrine of res judicata because the claim was not mature at the time it filed its answer in the prior suit and because the claim did not arise out of the same subject matter as the prior suit.

Res judicata prevents parties and their privies from re-litigating a cause of action that has been finally adjudicated by a competent tribunal. *Ingersoll-Rand Co. v. Valero Energy, Corp.*, 997 S.W.2d 203, 207 (Tex. 1999). Also precluded are claims or defenses that, through diligence, should have been litigated in the prior suit but were not. *Id.* The doctrine is intended to prevent

causes of action from being split, thus curbing vexatious litigation and promoting judicial economy. *Id.* Res judicata, however, does not bar a former defendant who asserted no affirmative claim for relief in an earlier action from stating a claim in a later action that could have been filed as a cross-claim or counterclaim in the earlier action, unless the claim was compulsory in the earlier action. *Id.*

A counterclaim is compulsory only if: (1) it is within the jurisdiction of the court; (2) it is not at the time of filing the answer the subject of a pending action; (3) the claim is mature and owned by the defendant at the time of filing the answer; (4) it arose out of the same transaction or occurrence that is the subject matter of the opposing party's claim; (5) it is against an opposing party in the same capacity; and (6) it does not require the presence of third parties over whom the court cannot acquire jurisdiction. *Id.*

Texas follows the transactional approach to res judicata in determining what claims arise out of the same subject matter. *See Barr v. Resolution Trust Corp*, 837 S.W.2d 627, 630–31 (Tex. 1992). Under the transactional approach, a judgment in a previous suit precludes a second action by the parties on matters actually litigated and causes of action arising out of the same subject matter that could have been litigated in the first suit. *Id.* at 630. Whether a transaction or series of transactions exists is to be determined "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a trial unit conforms to the parties' expectations or business understanding or usage." *Id.* at 631. When there is a legal relationship, such as under a lease or contract, all claims arising from that relationship arise from the same subject matter. *See Genecov Group, Inc. v. Addicks–Fairbanks Road Sand Co.,* 144 S.W.3d 546, 553 (Tex. App.—Tyler 2003, pet. denied); W*eiman v. Addicks–Faribanks Road Sand Co.*, 846 S.W.2d 414, 419 (Tex.App.-Houston [14th Dist.] 1992, writ denied).

Lafayette first claims the wrongful termination claim was not a compulsory counterclaim in the first suit because it was not "mature" when it filed its original answer in that suit. Thus, it asserts the claim is not barred by res judicata. A claim is mature when it has accrued. *Ingersoll-Rand,* Co, 997 S.W.2d at 207. To show the claim was not mature, Lafayette relies on a notice of default provision in the contract that required the parties to give notice of a default and allow the defaulting party thirty days to cure before suit could be filed. The provision provides, "Default of this AGREEMENT will be implied with VENDOR or CLIENT's failure to fulfill the terms and conditions herein. VENDOR or CLIENT shall provide written notice of default, and allow the defaulting party 30 days to cure the default. If CLIENT request[s] termination prior to the end of this agreement Client will be liable for the unpaid balance of the agreement."

In the prior litigation, CCU gave Lafayette notice of default. Lafayette did not cure the default in thirty days. CCU then sent Lafayette notice it was terminating the contract effectively immediately and filed suit. According to Lafayette, it could not then file a wrongful termination claim until it gave CCU notice of default and an opportunity to cure the "default." We disagree. We conclude the issue of whether CCU's termination was wrongful was fully mature after CCU terminated the contract based on its prior notice of default to Lafayette and Lafayette's failure to cure the default. Moreover, given that the contract had been terminated, there was no default that could be cured. Indeed, the notice provision states that if CCU requested termination prior to the end of the term of the agreement, CCU would be liable for the unpaid balance of the agreement. We conclude when CCU terminated the contract, Lafayette's claim regarding the termination became mature.

Lafayette next contends the wrongful termination claim was not a compulsory counterclaim because it did not arise out of the same subject matter as the original suit. Again, we disagree with Lafayette. The basis of Lafayette's claim in this suit is that CCU's termination

of the contract was wrongful.  To prevail, Lafayatee had to show CCU had no legal basis for terminating the contract.  CCU's basis for terminating the contract was based in large part on Lafayette's breach of the same contract that was determined in the prior suit.  We conclude the wrongful termination case involves the same subject matter as the prior suit.  *See in re Matlock Land, Ltd., Inc.*, 149 B.R. 425, 429 (E.D. Tex. 1992) (applying Texas law to conclude wrongful termination claim should have been brought as counterclaim in prior breach of contract proceeding).  Consequently, we overrule Lafayette's first and second issues.  Because of our resolution of these issues, we need not address Lafayette's remaining issues.  We affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

111439F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

LAFAYETTE ESCADRILLE, INC.,
Appellant

No. 05-11-01439-CV      V.

CITY CREDIT UNION, Appellee

On Appeal from the 160th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-10-03243-L.
Opinion delivered by Justice O'Neill.
Justices Francis and Murphy participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee CITY CREDIT UNION recover its costs of this appeal
from appellant LAFAYETTE ESCADRILLE, INC.

Judgment entered this 9th day of May, 2013.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE