**LONE STAR GAS COMPANY,**
Petitioner,

v.

**EFP CORPORATION, Respondent.**

No. 00–0601.

Supreme Court of Texas.

Dec. 20, 2001.

Randall C. Grasso, Palmer Allen & McTaggart, Dallas, for petitioner.

Daniel C. Bitting, Derek Tod Gilliland, Scott Douglass & McConnico, Austin, Ron Butler, Marlin, for respondent.

PER CURIAM.

EFP Corporation operates a plastic molding manufacturing plant using natural gas purchased from Lone Star Gas Company. From November 3, 1993 to March 5, 1995, EFP was a commercial customer paying rates set by Lone Star's franchise with the City of Marlin, where EFP's plant is located. Since March 6, 1995, EFP has purchased gas under an industrial contract with Lone Star. In August 1997, Lone Star discovered that it had been charging EFP for only about ten percent of EFP's actual consumption because it had mistakenly read only the first five of the six dials on EFP's meter. Lone Star immediately corrected its mistake and sued EFP for the underpayment. EFP conceded that it had received and used the volumes of gas as asserted by Lone Star, but it moved for summary judgment on the grounds that Lone Star's claim on EFP's commercial account was barred by the UCC Statute of Frauds, TEX. BUS. & COM.CODE § 2.201(a), and that Lone Star was estopped to assert its claim under the industrial contract be-

cause of its provision that "[m]eter measurements computed by [Lone Star] according to its standard operating practices shall be conclusive." The trial court granted the motion, and the court of appeals affirmed. 63 S.W.3d 463 (Tex.App.-Waco 2000). We reverse and remand the case to the trial court for further proceedings.

■ The parties agree that a sale of gas is subject to the UCC, section 2.201(a) of which provides:

> Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

EFP argues, and the court of appeals held, that Lone Star's invoices to EFP constituted the contract between them for the sale and purchase of gas. Lone Star asserted in its response to EFP's motion for summary judgment that the applicable contract was Lone Star's franchise agreement with the City of Marlin. The franchise agreement is not in the record, and the court of appeals refused to take judicial notice of it. Moreover, the court concluded that the existence of any such agreement did not "affect the issue of whether there is a gas-purchase agreement with Lone Star." 63 S.W.3d at 467. We disagree. EFP does not deny that the City of Marlin was authorized by statute to set rates for sales by Lone Star. See Tex. Util.Code §§ 103.001–.022. Lone Star was not authorized to charge rates other than those set by the city. See Tex. Util.Code §§ 103.001 and 181.009. Thus, the invoices could not have been the entire agreement. In the absence of the franchise agreement, EFP failed to prove as a matter of law that Lone Star's claim on the commercial account was barred by the Statute of Frauds.

■ The parties' industrial contract provided in part:

> Meter measurements computed by [Lone Star] according to its standard operating practices shall be conclusive except where meter is found to be inaccurate by as much as 1 per cent fast or slow or failed to register, in either of which cases [Lone Star] shall repair or replace the meter. The quantity of gas delivered while the meter was inaccurate or failed to register shall be determined by correcting the error if the percentage of error is ascertainable by calibration test or mathematical calculation.

Lone Star's evidence showed that the undercharge was due not to any defect in EFP's gas meter, or any erroneous readings taken from it (of five of the six dials), so far as they went, or any deviation from the procedures used to report those readings for billing purposes, but rather to Lone Star's mistake in setting up EFP's account as a "five-dial" account rather than a "six-dial" account. In response to EFP's motion for summary judgment, Lone Star offered evidence that the mistake in billing could be corrected mathematically from the meter readings that were taken. Given this evidence, EFP did not establish as a matter of law that the underbilling was due to "[m]eter measurements computed ... according to [Lone Star's] standard operating procedures" that the industrial contract made conclusive.

Because we conclude that EFP did not establish its right to summary judgment as

a matter of law, without hearing oral argument, TEX.R.APP. P. 59.1, we reverse the judgment of the court of appeals and remand the case to the trial court for further proceedings.