NUMBER
13-03-520-CV

                                 COURT OF
APPEALS

                     THIRTEENTH DISTRICT OF
TEXAS

                         CORPUS CHRISTI B EDINBURG

 

TURNER
CONSTRUCTION COMPANY OF TEXAS,                       Appellant,

                                                             v.

PHARR-SAN JUAN- ALAMO INDEPENDENT

SCHOOL DISTRICT AND ITS BOARD OF
TRUSTEES,                Appellees.

 

 

                     On appeal from the 93rd District
Court

                                        of
Hidalgo County, Texas.

 



 

                                M
E M O R A N D U M   O P I N I O N

 

     Before Chief Justice
Valdez and Justices Hinojosa and Yanez

 

      Opinion by Chief
Justice Valdez

 

 








Appellant, Turner Construction Company of Texas,
seeks reversal of the summary judgment granted to appellees, the PharrBSan JuanBAlamo Independent School District and its Board of
Trustees (the AISD@).  We reverse
the decision of the trial court and remand.

I.  Facts and
Procedural History

A.  The
Contract

In September 1995, Turner, a construction company,
contracted with the ISD to build a high school. 
The contract stipulated that the ISD would provide Turner with contract
documents necessary to build the school. 
The ISD entered into a separate contract with an architect to design
those documents, including the heating, ventilating, and air conditioning
system (AHVAC@).  Per terms
of the contract, Turner was not liable to the ISD or the architect for Adamage resulting from errors, inconsistencies or
omissions in the Contract Documents unless [Turner] recognized such error,
inconsistency or omission and knowingly failed to report it to the Architect.@  

B.  The Mold

Turner substantially completed the school according
to the architect=s plans in September 1997.  Both Turner and the ISD now allege that the
architect created a flawed HVAC design resulting in the accumulation of mold,
mildew, and moisture inside the school. 
Turner alleges that the ISD was notified of the problem as early as the
fall of 1997, but rejected the advice of its own engineers to perform
remediation because it was too expensive.








During the 1999-2000 school year, students of the
ISD began to complain of health problems because of the mold.  In 2000, the ISD hired an environmental
consultant to inspect the school.  The
consultant reported finding mold inside the HVAC system and conducted
remediation.  Beginning in May 2000,
students and employees of the ISD began bringing personal injury suits from
exposure to mold.  

C.  The ISDBTurner Lawsuit (C-1038-00-B)

The ISD filed suit against Turner and other
contractors on May 29, 2001 in cause no. C-1038-00-B.  The ISD accused Turner of breach of contract,
breach of fiduciary duty, breach of duty of good faith and fair dealing, and
negligence with regard to execution of its duties under its contract to build
the school.  All parties settled, and on
June 4, 2001, the court entered a take-nothing judgment against the ISD and
discharged all defendants from any claim brought by the ISD.  The court further ordered that all
cross-actions and third-party actions previously filed in cause no. C-1038-00-B
were barred.   The settlement was under
seal, but has since been revealed in part. 
Its contents are not disputed by the parties.  It reads: 

The parties to this Agreement acknowledge and
confirm that by agreement and operation of law, this Agreement and settlement
shall have no impact upon or relationship to the personal injury claims that
have been asserted or may be asserted based in whole or in part upon the
existence of mold, mildew, bacteria or fungi in the Project (the APersonal Injury Claims@).  The parties further agree that they will not
seek to introduce evidence of this Agreement as evidence of any admission,
declaration against self interest or measure of proportionate responsibility in
any pending or subsequently filed causes of action for such alleged personal
injuries by any party not a party to this Agreement.  The rights of any party to this Agreement to
assert any defense, third party claim, indemnity claim, contribution claim,
cross actions and/or any other cause of action against each other in connection
with, in defense of or relating to the Personal Injury Claims shall not be and
are not hereby waived, released, amended or altered by this agreement.

 

D.  The
Personal Injury Suits








On May 5, 2000, a number of plaintiffs filed tort
claims against the architect, Turner, and others in cause no. C-779-00-B.  These plaintiffs alleged that negligent construction
and installation had created the mold problem, which resulted in their
illness.  Hundreds more plaintiffs and
plaintiffs-interveners joined the suit throughout August and September, 2001.  On August 3, 2000, five plaintiffs filed
similar claims against Turner in cause no. C-1365-00-G.  The two causes were eventually combined.

E.  Turner=s Joinder 

On June 29, 2001, Turner filed a joinder of
responsible third parties in cause nos. C-779-00-B and C-1365-00-G, casting
itself as a third-party plaintiff and seeking to hold the ISD liable as a
responsible third party under sections 33.003 and 33.004 of the Texas Civil
Practice and Remedies Code.  See Tex. Civ. Prac. & Rem. Code Ann. '' 33.003-004 (Vernon 2005).  On September 22, 2002, Turner amended the
joinder, suing the ISD as a responsible third party and as a third-party
defendant for breach of contract.

Turner claimed the ISD=s
breach of contract with regard to the HVAC system exposed Turner to the
personal injury suits.  It requested
unspecified direct and consequential damages, as well as attorney=s fees.  The
ISD answered with a general denial.

F.  Summary
Judgment Motions








On January 13, 2003, the ISD filed its first amended
motion for summary judgment and no evidence motion for summary judgment.  In that motion, the ISD asserted its
entitlement to summary judgment under Texas Rules of Civil Procedure 166a(c)
and 166a(j),[1]
arguing (1) the affirmative defenses of sovereign immunity, res judicata, compulsory
counterclaim, and statute of limitations; and (2) no evidence that the ISD=s sovereign immunity was waived.  The ISD attached the previous pleadings filed
in the first  lawsuit, the contract
documents and the certificate of substantial completion.

On April 24, 2003, the court entered its order
granting the ISD=s motion for summary judgment.  The order does not state on which grounds the
motion was granted, nor does it specify whether the grounds related to the
general motion, the no-evidence motion, or both.  On August 20, 2003,  the court severed the ISD=s summary judgment against Turner from the remaining
claims in the suit and entered final judgment against Turner.  Turner now appeals, claiming that the ISD was
not entitled to summary judgment on any ground.

II. Standard of Review








The function of a summary judgment is to eliminate
patently unmeritorious claims and defenses, not to deprive litigants of the
right to a jury trial.  Alaniz v. Hoyt,
105 S.W.3d 330, 344 (Tex. App.BCorpus Christi 2003, no pet.).  We review the evidence "in the light
most favorable to the nonmovant, disregarding all contrary evidence and
inferences."  KPMG Peat Marwick
v. Harrison County Hous. Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999);  Branton v. Wood, 100 S.W.3d 645, 646
(Tex. App.BCorpus Christi 2003, no pet.).  In a traditional motion for summary judgment,
the movant bears the burden of showing both no genuine issue of material fact
and entitlement to judgment as a matter of law. 
Hoyt, 105 S.W.3d at 345. 
We affirm a trial court's ruling on a summary judgment motion if any
theory advanced in the motion is meritorious. 
State Farm Fire & Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex.
1993);  Boren v. Bullen, 972
S.W.2d 863, 865 (Tex. App.BCorpus Christi 1998, no pet.).  We review a traditional motion for summary
judgment de novo to determine whether a party established its right to prevail
as a matter of law.  Nixon v. Mr.
Property Mgmt. Co., Inc., 690 S.W.2d 546, 548‑49 (Tex. 1985);  Ortega v. City Nat'l Bank, 97 S.W.3d
765, 771 (Tex. App.BCorpus Christi 2003, no pet.) (op. on reh'g).   When the trial court does not specify the
grounds it relied on in granting the motion, we uphold it on any valid ground asserted
by the movant.  See Bradley v. State
ex rel. White, 990 S.W.2d 245, 247 (Tex. 1999).

In conjunction with and as a part of its traditional
motion, the ISD also asserted that there was no evidence of several elements of
Turner=s claim against it.  See Tex.
R. App. P. 166a(i).  Turner claims
that the ISD=s no-evidence motion for summary judgment was
improper because (1) it did not identify or challenge a specific element of any
claim, and (2) a no-evidence motion for summary judgment cannot be based on
affirmative defenses upon which the defendant bears the burden of proof.   

When a no evidence motion for summary judgment does
not specifically state which elements lack evidence, the motion should be
treated as a motion for a traditional summary judgment.  Amouri v. Southwest Toyota, Inc., 20
S.W.3d 165, 168 (Tex. App.BTexarkana 2000, pet. denied); Weaver v. Highlands
Ins. Co., 4 S.W.3d 826, 829 n.2 (Tex. App.BHouston
[1st Dist.] 1999, no pet.).

A party should not file a no evidence motion for
summary judgment based on an affirmative defense that it has the burden to
prove at trial.  See Thomas v. Omar
Invs., Inc., 156 S.W.3d 681, 684 (Tex. App.BDallas
2005, no pet.).








We have reviewed the ISD=s no evidence claims and conclude that the school
district raised the no evidence claim in support of its own asserted
affirmative defense of sovereign immunity. 
See Amouri, 20 S.W.3d at 168.  This is improper as a matter of law.  See Thomas, 156 S.W.3d at 684; Nowak
v. DAS Inv. Corp., 110 S.W.3d 677, 680 (Tex. App.BHouston [14th Dist.] 2003, no pet.).  Thus, we will treat the ISD=s motion as a traditional motion only.   

III. Sovereign Immunity

A.  Overview
of the Law

Sovereign immunity, unless waived, protects the
State of Texas, its agencies and its officials from lawsuits for damages absent
legislative consent to sue.  See Fed.
Sign v. Tex. S. Univ., 951 S.W.2d 401, 405 (Tex. 1997); Griffin v. Hawn,
341 S.W.2d 151,152‑53 (Tex. 1960). 
An independent school district is considered an agency of the state and
thus enjoys the State=s sovereign immunity.  See Barr v. Bernhard, 562 S.W.2d 844,
846 (Tex. 1978); Cox v. Galena Park Ind. Sch. Dist., 895 S.W.2d 745, 748
(Tex. App.BCorpus Christi 1994, no writ).   The courts have extended governmental
immunity of a school district to its board of trustees.  See Bates v. Dallas Indep. Sch.
Dist., 952 S.W.2d 543, 551 (Tex. App.BDallas 1997, writ denied); see also Tex. Educ. Code Ann. ' 22.0511(a) (Vernon Supp. 2004-05).  

Sovereign immunity embraces two principles:  (1) immunity from suit, and (2) immunity from
liability.  See Fed. Sign, 951
S.W.2d at 405; Mo. Pac. R.R. Co. v. Brownsville Navigation Dist., 453
S.W.2d 812, 813 (Tex. 1970).








Immunity from suit bars a suit against the State
unless the State expressly gives its consent to the suit. See Fed. Sign,
951 S.W.2d at 405; Univ. of Tex.‑Pan Am. v. De Los Santos, 997
S.W.2d 817, 821 (Tex. App.BCorpus Christi 1999, no pet.).  In other words, although the claim asserted
may be one in which the State acknowledges liability, the rule precludes a
remedy until the legislature consents to suit. 
See Fed. Sign, 951 S.W.2d at 405. 
A party suing the State must allege consent to suit either by reference
to statute or express legislative permission. 
See Mo. Pac. R.R., 453 S.W.2d at 814.  The State must consent "by clear and
unambiguous language" to suit by statute or by legislative resolution.
See Fed. Sign, 951 S.W.2d at 405; see also Gen. Servs. Comm'n v. Little‑Tex
Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001); Univ. of Tex. Med.
Branch v. York, 871 S.W.2d 175, 177 (Tex. 1994).

Immunity from liability protects the State from
judgments even if the legislature has expressly given consent to the suit.  See Fed. Sign, 951 S.W.2d at 405; De
Los Santos, 997 S.W.2d at 821.  In
other words, even if the legislature authorizes suit against the State, the
question remains whether the claim is one for which the State acknowledges
liability. See Fed. Sign, 951 S.W.2d at 405.  The State neither creates nor admits
liability by granting permission to be sued. 
See id. ("[a] resolution granting permission to sue does not
waive to any extent immunity from liability.").  However, when the State contracts, the State
is liable on contracts made for its benefit as if it were a private person;
thus, the State waives immunity from liability when it contracts with private
citizens or companies.  See id. at
405‑06.  Nevertheless, a private
citizen must have legislative consent to sue the State on a breach of contract
claim; the act of contracting alone does not waive the State's immunity from
suit.  See id. at 408.








The Texas Legislature has expressly waived a public
school district=s immunity from suit for purposes of adjudicating a
claim for breach of contract against the public school district.  See
Tex. Loc. Gov=t Code Ann. '' 271.151 - 152 (Vernon 2005)
(waiving public school district=s immunity to suit for contracts for the provision
of goods or services to the district);
Tex. Educ. Code Ann. ' 11.151(a) (Vernon Supp. 2004-05) ("The
trustees of an independent school district constitute a body corporate and in
the name of the district may . . . sue and be sued . . . ."); see also
Welch v. Coca‑Cola Enters., 36 S.W.3d 532, 538 (Tex. App.BTyler 2000, no pet.);  Dillard v. Austin Indep. Sch. Dist.,
806 S.W.2d 589, 594 (Tex. App.BAustin 1991, writ denied).   

The legislature has also expressly limited the
waiver of a public school district=s immunity in tort cases to special
circumstances.  See Tex. Civ. Prac. & Rem. Code Ann. ' 101.021 (Vernon 2005); Tex. Loc. Gov=t Code Ann. ' 271.157 (Vernon 2005) (AThis subchapter does not waive sovereign immunity to
suit for a cause of action for a negligent or intentional tort.@); see also City of Alton v. Sharyland Water
Supply Corp., 145 S.W.3d 673, 679 (Tex. App.BCorpus
Christi 2004, no pet.).  Section 101.021
of the civil practice and remedies code, for example, waives immunity of
governmental entities for Apersonal injury . . . so caused by a condition or
use of . . . real property.@  Tex. Civ. Prac. & Rem. Code Ann. ' 101.021(2); see Brown v. Tex. DOT, 80 S.W.3d
594, 597 (Tex. App.BCorpus Christi 2000), aff=d, 80
S.W.3d 549 (Tex. 2002).  

B.  Sounding
in Tort or Contract

Turner asserts that its claims against the ISD arise
from its contract with the ISD regarding the construction of the school, while
the ISD claims that Turner=s claims are actually claims of negligence and not
of breach of contract. 








The original plaintiffs sued Turner alleging tort
claims of personal injuries arising from exposure to mold and other airborne
substances inside the school building. 
They claimed their injuries were caused by the HVAC system through (1)
failure to properly design, construct, maintain, monitor and repair it; (2)
failure to detect its defects; and (3) failure to mitigate or prevent the
growth of mold caused by the design. 
Turner=s amended joinder alleged that the ISD Ahas breached its contract and implied warranties
with Turner in numerous ways.@ 

The Texas Supreme Court recently noted that A[c]laims must be brought on the contract . . . if
liability arises solely from the contract or must be determined by reference to
it.  On the other hand, claims can be
brought in tort (and in court) if liability arises from general obligations
imposed by law.@  In re
Weekley Homes, L.P., No.04-0119, 2005 Tex. LEXIS 817, at *10-11 (Tex. Oct.
28, 2005) (orig. proceeding); see also Dewitt County Elec. Coop., Inc. v.
Parks, 1 S.W.3d 96, 105 (Tex.  1995)
(Aif the defendant's conduct . . . would give rise to
liability independent of the fact that a contract exists between the parties,
the plaintiff's claim may also sound in tort. Conversely, if the defendant's
conduct . . . would give rise to liability only because it breaches the
parties' agreement, the plaintiff's claim ordinarily sounds only in contract.@).  

The ISD states in its motion for summary judgment, AObvious in the case at bar, Turner seeks to impose
liability against [the ISD] for tort claims made against Turner by Plaintiffs
and Intervenors.  The damages sought are
not the economic loss to the subject of the contract and thus this case sounds
in tort.@  As evidence,
the ISD attached a copy of the contract between Turner and the ISD.  








We disagree with the ISD=s assertion. 
Turner initially stated in its answer to the first-party plaintiffs that
ATurner alleges and affirmatively pleads that the
sole proximate cause of the injuries, if any, suffered by the [plaintiffs] was
the [ISD=s] breach of its contractual duty and its implied
and express warranties to Turner in providing . . . Turner with flawed plans
and specifications.@  Turner
relies on contractual provisions in sections 2.4 (AThe Construction Manager shall not be required to
provide professional services which constitute the practice of architecture or
engineering@), 3.1 (AThe Owner shall provide full information in a timely
manner . . . the Construction Manager shall be entitled to rely upon the
accuracy of any such information, reports, surveys, drawings and tests
[furnished by the Owner]@), and 3.3 (AThe Owner shall retain an Architect to provide the
Basic Services, including normal structural, mechanical, and electrical
engineering services . . .@).  Throughout
its pleadings, Turner asserts that the ISD=s failure to perform as required by the contract is
the cause of the injuries alleged and relies exclusively on the terms of the
contract itself to assert this claim.  

The ISD, in fact, recognizes Turner=s reliance on the contract in its motion for summary
judgment: 

Essentially the claim [brought by Turner] is under
Paragraph 3.3 >Architect= of the Contract which states that the owner shall
retain an architect to provide the basic services. . . The gravamen of the
third-party joinder against [the ISD] alleges a failing to retain a competent
architect to provide basic services . . . failing to provide plans and specs
sufficient and instead providing plans and specs which were flawed, inaccurate
and did not produce their intended result, failing to fulfill its contractual
obligation to Turner to remedy the effects of the design defects . . . .








Despite appearing to recognize the source of Turner=s claims in its own motion for summary judgment, the
ISD nonetheless argues Athese allegations are obviously claims of negligence
and not claims for breach of the contract.@  We disagree;
absent the contractual relationship between the ISD and Turner, there would be
no relationship or obligations among these parties and thus, no liability.  See Bass v. City of Dallas, 34 S.W.3d
1, 9 (Tex. App.BAmarillo 2000, no pet.) (AIf the defendant=s
conduct . . . would give rise to liability independent of the fact that a
contract exists between the parties, the plaintiff=s claims may also sound in tort.@).  Therefore,
we conclude, Turner=s claims against the ISD arise through the parties= contractual relationship, not out of tort law, and
thus are the type of claims for which the ISD=s
sovereign immunity has been waived.  See
Tex. Loc. Gov=t Code Ann. ' 271.152.

Furthermore, although we consider Turner=s argument that its claims arise under contract law
to be more compelling, we note that regardless of whether this claim arises
from contract or tort law, the ISD=s sovereign immunity should be waived, given that
Turner expressly complains about the Acondition or use@ of Areal property@ causing personal injury.  See Tex.
Civ. Prac. & Rem. Code Ann. ' 101.021(2). 
The trial court could not have properly granted summary judgment in
favor of the ISD on this ground.   

IV. 
Expenditures of Governmental Funds








The ISD asserts as an affirmative defense that Ato the extent that Turner seeks to impose an
indemnity obligation on [the ISD], the giving of indemnity by a school district
may amount to making a gift of public funds or lending of public credit for
private purposes contrary to restrictions found in the Texas Constitution.@  See Tex. Const. art. III ' 51 ("the Legislature shall have no power to
make any grant or authorize the making of any grant of public moneys to any
individual, association of individuals, municipal or other corporations
whatsoever").   With exceptions not
here applicable, "the Legislature shall have no power to authorize any
county, city, town or other political corporation or subdivision of the State
to lend its credit or to grant public money or thing of value in aid of, or to
an individual, association or corporation whatsoever."  Id. at '
52.           Turner
argues that its suit for damages does not violate the policy against the
gratuitous application of public funds because (1) reimbursement for the
damages would be compensatory rather than gratuitous, and (2) governmental entities
that have caused losses may constitutionally provide compensation for them.        

We agree with Turner.  We cannot find a single Texas case that has
held that a governmental entity cannot constitutionally indemnify or provide
compensation for losses it has caused through a breach of contract due to the
restriction against the expenditure of governmental funds.  Instead, we have found cases that hold to the
contrary.  See, e.g., Tex. DOT v. Able,
35 S.W.3d 608, 618 (Tex. 2000) (concluding that DOT waived immunity and had to
pay damages to plaintiff as found by jury); City of Dallas v. Redbird Dev.
Corp., 143 S.W.3d 375, 389 (Tex. App.BDallas 2004, no pet.) (upholding $3 million verdict
against city for breach of contract claim); Alamo Cmty. College Dist. v.
Browning Constr. Co., 131 S.W.3d 146, 167 (Tex. App.BSan Antonio 2004, pet. filed ) (upholding jury
verdict against college district for breach of contract claim).

Thus, the ISD has failed to establish that it is
entitled as a matter of law to summary judgment on this ground, and the trial
court could not have properly granted summary judgment in favor of the ISD
based on the Aillegal expenditure of governmental funds.@ 

V.  Compulsory
Counterclaims and Res Judicata

The ISD asserts as its third and fourth grounds for
summary judgment that the doctrines of compulsory counterclaims and res
judicata bar Turner=s suit, given the prior suit and settlement
agreement already reached between these parties.  In support of this claim, the ISD attached
pleadings and documents from the prior suit. 








Res judicata prevents parties from relitigating a
cause of action that has been finally adjudicated by a competent tribunal.  Ingersoll‑Rand Co. v. Valero Energy
Corp., 997 S.W.2d 203, 206 (Tex. 1999). 
The doctrine also precludes claims or defenses that, through diligence,
should have been litigated in the prior suit but were not.  See id. at 206-07.  Res judicata, however, does not bar a former
defendant who asserted no affirmative claim for relief in an earlier action
from stating a claim in a later action that could have been filed as a cross‑claim
or counterclaim in the earlier action, unless the claim was compulsory in the
earlier action.  Id. at 207.  A counterclaim is considered to be compulsory
only if (1) it is within the jurisdiction of the court, (2) it is not at the
time of filing the answer the subject of a pending action, (3) the claim is
mature and owned by the defendant at the time of filing the answer, (4) it
arose out of the same transaction or occurrence that is the subject matter of
the opposing party's claim, (5) it is against an opposing party in the same
capacity, and (6) it does not require the presence of third parties over whom
the court cannot acquire jurisdiction.  See
id.; see also Tex. R. Civ. P.
97(a).   A claim is mature when it
has accrued, i.e., when the party=s liability becomes fixed and certain.  See Ingersoll-Rand, 997 S.W.2d at
207-08.

Here, the ISD alleges that Turner=s claims for breach of contract by the ISD were
compulsory counterclaims in the suit the ISD filed against Turner, and
therefore had to be litigated in that suit or not at all.  Thus, according to the ISD, the settlement
agreement signed by the parties and enforced by the trial court is res judicata
of the breach of contract claims Turner is asserting now.  In the settlement agreement signed by the
parties in that initial suit, however, the parties themselves agreed that any
other claims they could assert against each other would not be considered
waived by their settlement: 








The
rights of any party to this Agreement to assert any defense, third party claim,
indemnity claim, contribution claim, cross actions and/or any other cause of
action against each other in connection with, in defense of or relating to the
Personal Injury Claims shall not be and are not hereby waived, released,
amended or altered by this agreement.

 

This settlement agreement became binding
on the parties when executed in conjunction with the trial court=s rendering of a final, take-nothing judgment for
both parties. See Compania Financiara Libano v. Simmons, 53 S.W.3d 365,
367 (Tex. 2001) (per curiam) (discussing application of res judicata to a
settlement agreement that ended prior litigation).

Furthermore, and more
importantly, the claims involved in the Personal Injury Plaintiffs v. Turner
suit do not fulfill the requirements of being compulsory counterclaims for the
ISD v. Turner suit because this first set of claims was not yet mature at the
time of the ISD v. Turner suit, and also because these claims involved third
parties over whom the court in the ISD v. Turner suit could not have properly
exercised jurisdiction.  

To review the chronology
of the events establishing this, we see that the first set of Personal Injury
Plaintiffs v. Turner claims in cause no. C-779-00-B were filed on May 5,
2000.  Then additional Personal Injury
Plaintiffs v. Turner claims in cause no. C-1365-00-G were filed on August 3,
2000, and later were combined with the first cause number.  

While these suits were
pending, the ISD v. Turner suit, cause no. C-1038-00-B, was filed on May 29,
2001.  The ISD v. Turner suit was then
settled on June 4, 2001.  








On June 29, 2001, Turner filed a motion to join the
ISD in the Personal Injury Plaintiffs v. Turner claims in cause no.
C-779-00-B.  Then, on September 25, 2001,
over 1200 new plaintiffs intervened in cause no. C-779-00-B, asserting personal
injury claims against Turner.  On
September 11, 2002, Turner filed its breach of contract cross-claim against the
ISD in cause no. C-779-00-B.  On August
29, 2003, almost 1000 new plaintiffs again intervened in cause no. C-779-00-B,
asserting personal injury claims against Turner. 

The ISD=s potential liability to Turner for breach of
contract relates directly to Turner=s liability to the personal injury plaintiffs;
neither of these liabilities are fixed and certain as the underlying claim by
the personal injury plaintiffs against Turner remains pending.  Thus, the claims asserted by Turner against
the ISD were not mature at the time  of
the ISD v. Turner suit in cause no. C-1038-00-B (May 29, 2001).  See Ingersoll-Rand, 997 S.W.2d at
207-08.  Also, Turner first brought the
ISD into the Personal Injury Plaintiffs v. Turner suit on June 29, 2001.  However, after this date, over 2000 new
plaintiffs intervened and also asserted personal injury claims against
Turner.  Therefore, the Personal Injury
Plaintiffs v. Turner claim involved third parties over whom the court in the
ISD v. Turner case could not properly assert jurisdiction because these additional
plaintiffs were still unknown at the time when a counterclaim in cause no.
C-1038-00-B would have been asserted. 
Id. at 207; see Strawder v. Thomas, 846 S.W.2d 51, 61 (Tex.
App.BCorpus Christi 1992, no writ).

Therefore, the trial court could not have properly
rendered summary judgment in favor of the ISD on these grounds.  

VI.  Statute
of Limitations 








As its fifth ground for summary judgment, the ISD
asserts an affirmative defense of limitations, arguing that Turner=s claim was not brought within either the two-year
statute of limitations period allowed for tort claims or the four-year period
for breach of contract claims.  See Tex. Civ. Prac. & Rem. Code Ann. '' 16.003, 16.051 (Vernon 2005).  In support of this defense, the ISD states
that the certificate of substantial completion of the construction contract
between the parties was signed and effective on August 11, 1997, and that
because all the duties allegedly violated by the ISD are related to
construction of the school, any and all breaches must have occurred before the
date of the certificate.  The ISD
attaches the signed certificate of substantial completion in support of this
claim.    The limitations period, as the
ISD argues, would have expired on August 11, 1999, for all tort claims and
August 11, 2002, for all contract claims. 
Turner first filed its motion for joinder asserting claims against the
ISD on September 11, 2002, a date after both alleged limitations periods had
expired.

 A defendant
moving for summary judgment on the affirmative defense of limitations has the
burden to establish conclusively that defense as a matter of law.  KPMG Peat Marwick v. Harrison County Hous.
Fin. Corp., 988 S.W.2d 746, 748 (Tex. 1999).  In this regard, the defendant must
conclusively prove when the cause of action accrued.  Id. 
On appeal, the movant still bears the burden of showing that there is no
genuine issue of material fact and that the movant is entitled to judgment as a
matter of law.  Rhone‑Poulenc,
Inc. v. Steel, 997 S.W.2d 217, 223 (Tex. 1999).  








Turner claims its suit is not barred by the statute
of limitations because the ISD=s summary judgment evidence failed to establish when
the claims accrued and limitations began to run.  We agree; the ISD=s evidence does not conclusively prove when the
cause of action accrued.  See KPMG
Peat Marwick, 988 S.W.2d at 748. 
Turner=s allegations in the joinder were that the ISD not
only failed to initially provide Turner with adequate architectural contract
documents, but then additionally failed to Afulfill
its contractual obligation to Turner to remedy the effects of the design
defects which had been created by its own agent(s), thereby causing injury to
Turner,@ Afailed to satisfy its obligation to follow the
advice of its . . . architect and engineer in order to remediate the effects of
the said design defects,@ and failed to Acause the architect to provide additional services
to correct the problems with the design of the HVAC system in violation of . .
. the Standard Form Agreement.@  








The ISD insists that all claims had to accrue by the
date of substantial completion, as the contractual relationship between the
parties expired on that date.  However,
as described by Turner above, the alleged failures to conform to the
contractual obligations were not confined to the period of time prior to the
September 1997 issuance of the certification of substantial completion.  Instead, the ISD=s alleged failure to provide adequate architectural
and design documents created ongoing failures to conform to the
contract, given the ISD=s failure to recognize and remedy the problems.  See, e.g., Alamo Comm. College Dist. v.
Browning Constr. Co., 131 S.W.3d 146, 165 (Tex. App.BSan Antonio 2004, pet. filed) (finding evidence of
breach of contract by college district for failing to correct design errors
previously made by its architect).  
Turner=s claim against the ISD is premised on its
assertions that the ISD had an ongoing obligation to correct or otherwise
remediate design defects in the HVAC system that arose at the onset of the
contract due to the faulty designs provided by the ISD, and that the ISD, once
it knew or should have known about the design defects in the system, was in
breach of this continuing obligation until it attempted to remediate the HVAC
design defects following the 1999-2000 school year.   A continuing breach of contract, including
failure to make necessary repairs to correct the breach, is not barred by the
statute of limitations simply because the original breach occurred outside the
statute.  See Salais v. Martinez,
603 S.W.2d 296, 297 (Tex. Civ. App.BEl Paso 1980, no writ) (recognizing failure to
repair under construction contract as a continuing breach); Kaiser v.
Northwest Shopping Ctr., Inc., 587 S.W.2d 454, 457 (Tex. Civ. App.BDallas 1979, writ ref'd n.r.e.) ("The general
rule is that in the event of a material breach of contract, the promisee may
treat the breach as total and sue for all foreseeable future damages, or, if
the promisor has not repudiated the contract, the promisee may elect to treat
the breach as partial and bring successive suits for continued or successive
breaches."); McCreless Properties, Ltd. v. F.W. Woolworth Co., 533
S.W.2d 863, 867 (Tex. App.BSan Antonio 1976, writ ref'd n.r.e.) (finding party
failed to make further repairs to continuing breach so that action was not
barred by four‑year statute of limitations).   As this Court has held, ALimitations begins to run on a continuing contract
at the earlier of the following:  (1)
when the work (under the contract) is compete; (2) when the contract is
terminated in accordance with its terms; or (3) when the contract is
anticipatorily repudiated . . . .@  City of
Corpus Christi, 126 S.W.3d 712, 725 (Tex. App.BCorpus Christi 2004, pet. dismissed) (citing Hubble
v. Lone Star Contracting Corp., 883 S.W.2d 379, 382 (Tex. App.BFort Worth 1994, writ denied).  Here, the first prong applies: the statute of
limitations began to run Awhen the work [was] complete.@  Id. However,
the claims asserted by Turner, and the defenses raised by the ISD, turn
entirely on when the obligations of the ISD to Turner were actually considered
to be Acomplete.@  As this
itself is the source of the dispute between the parties, we cannot conclude it
has been resolved for the purposes of summary judgment.  See KPMG Peat Marwick, 988 S.W.2d at
748. 








Furthermore, the ISD itself contracted for the
possibility of ongoing obligations between the parties that could potentially
arise after the date of substantial completion: AAs to
acts or failures to act occurring after the [date of substantial
completion], any applicable Statute of Limitations shall commence to run . . .
not later than . . the date of actual commission of any other act or failure to
perform any duty or obligation . . . , whichever occurs last@ (emphasis added). 
Having explicitly agreed to the contrary, the ISD may not now insist
that the date of substantial completion ended all potential causes of
action.  

Given that the ISD=s
response to the allegations raised by Turner=s
cause of action does not conclusively establish when the cause of action
accrued, coupled with Turner=s evidence that breaches by the ISD were ongoing
until mid-2000, we are not prepared to hold that the ISD met its burden of  showing that it was entitled to judgment as a
matter of law.   See id.  To the extent the order granting summary
judgment in favor of the ISD was based on a statute of limitations, the trial
court committed error.

VII. 
Conclusion

We have found that the ISD was not entitled to
summary judgment as a matter of law on any of the grounds asserted in its
motion for summary judgment.  See Lone
Star Gas Co. v. EFP Corp., 92 S.W.3d 417, 418-19 (Tex. 2001).  We reverse the judgment of the trial court
and remand to the trial court for further proceedings.  

 

 

 

                                           

Rogelio Valdez,

Chief Justice

 

 

Memorandum Opinion delivered and filed

this 16th day of March, 2006.











[1]Because there is no rule 166a(j),
we assume the ISD meant 166a(i).  See
Tex. R. Civ. P. 166a(i).