GAMMA GROUP, INC., Appellant

v.

**HOME STATE COUNTY MUTUAL INSURANCE COMPANY,**
Appellee.

No. 05–10–00070–CV.

Court of Appeals of Texas,
Dallas.

May 12, 2011.

Rehearing Overruled June 9, 2011.

---

Alan B. Rich, Law Office of Alan B. Rich, Dallas, for Appellant.

Charles J. Cain, Steven B. Skarnulis, Cain & Skarnulis, L.L.P., Austin, Brock C. Akers, Evelyn Ailts Derrington, Neal David Kieval, Phillips & Akers, P.C., Houston, for Appellee.

Before Justices O'NEILL, FRANCIS, and MYERS.

## OPINION

Opinion By Justice MYERS.

Gamma Group, Inc. appeals the trial court's judgment granting Home State County Mutual Insurance Company's motion for summary judgment on Gamma Group's cause of action against Home State. The trial court granted the motion for summary judgment on the ground of res judicata. In one issue, Gamma Group contends the trial court erred in granting the motion for summary judgment. We affirm the trial court's judgment.

## BACKGROUND

This case involves a 1995 agreement between Home State, an insurance company issuing non-standard automobile-insurance policies, and Gamma Group, Home State's agent for binding and adjusting the policies. The agency agreement provided Gamma Group would produce the policies, collect premiums, and adjust any liability claims of Home State's insureds. Gamma Group also used the collected premiums to pay its commission and to pay Home State and its reinsurer, Transatlantic Reinsurance Co. (TRC). *See Gamma Group, Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203, 206 (Tex.App.-Dallas 2007, pet. denied). Home State had disagreements with Gamma Group over its performance as agent, and Home State withdrew from the arrangement and terminated the agency agreement effective January 1, 1999. *See id.* at 207. Following termination of the agreement, Gamma Group could no longer write new business on Home State policies, but Gamma Group remained responsible for adjusting

claims made on policies issued during the term of the agency agreement (the run-off claims). *Id.* In 2002, Home State terminated Gamma Group's servicing of run-off claims and hired Marshall Contract Adjustors to service those claims. *Id.* at 208. Home State and TRC paid over $4 million on the run-off claims. *Id.*

In the underlying suit, Home State and TRC alleged Gamma Group breached the agency agreement by failing to pay the claims adjusted by Marshall out of the premiums Gamma Group had collected. Because Gamma Group had not paid the claims but had retained the premiums, Home State and TRC were required to pay the claims out of their own funds. Home State and TRC sought recovery of the premiums Gamma Group improperly retained. *Id.*

Gamma Group filed a counterclaim against Home State alleging that under paragraph 6.2 of the agency agreement, Home State was liable to Gamma Group for any amounts Gamma Group owed TRC relating to the claims adjusted by Marshall.[1] Gamma Group stated that in the agency agreement, Home State had promised to be responsible for certain expenses, including "losses and loss adjustment expenses incurred at the direction of the Company [Home State]." Gamma Group alleged that because Home State had transferred the claims-adjustment responsibilities to Marshall, Home State was responsible for any losses and adjustment expenses incurred relating to Marshall. "Accordingly," Gamma Group alleged, "if TRC was entitled to recover expenses allegedly incurred relating to the Marshall

---

1. Paragraph 6.2 of the agency agreement provided:

    The Company [Home State] is responsible for and shall promptly pay all expenses attributable to the actions of the Company as a result of business produced under this Agreement. This responsibility shall not be altered whether the expense is billed to the Company or the Agent. These expenses include, but are not limited to: ...

    E. losses and loss adjustment expenses incurred at the direction of the Company....

Adjustors, Gamma is entitled to reimbursement from Home State." The trial court found, and this Court agreed, "that settlements paid for ordinary claims are not expenses that can be attributed to Home State's actions; they are losses caused by insureds under the policies." *Gamma Group*, 242 S.W.3d at 209. The trial court determined that Gamma Group wrongfully retained some of the premiums, but the court also decided that Gamma Group was responsible for paying only the reasonable settlements and expenses out of the premiums. *Id.* at 208. We disagreed with the trial court on that issue and determined the trial court had implied a term, "reasonableness," not present in the contract. *Id.* at 212. We remanded the case to the trial court for recalculation of the amount of damages. *Id.* at 215.

Gamma Group then filed this suit against Home State seeking indemnity under section 13.2 of the agency agreement for the unreasonable amounts of any settlements on the runoff claims adjusted by Marshall that Gamma Group was required to pay out of the premiums it had collected. Section 13.2 provided:

> The Company [Home State] shall indemnify and hold the Agent [Gamma Group] harmless from any and all claims, demands, causes of action, damages, judgments and expenses (specifically including but not limited to attorney's fees and the costs of court) which may be made against Agent and which arise, either directly or indirectly, out of any intentional action or inaction of the Company including, but not limited to, any such acts of negligence by the Company in connection with any rights or obligations of Company incurred in connection with this Agreement.

Gamma Group alleged that Home State acted intentionally and negligently in causing Marshall to adjust and settle claims for unreasonable amounts and that under section 13.2, Home State was obligated to indemnify Gamma Group from the unreasonable settlement amounts on claims adjusted by Marshall.

Home State moved for summary judgment on several grounds, including that the present suit was barred by res judicata. The trial court granted Home State's motion for summary judgment on the specific ground that Gamma Group's suit was barred by res judicata.

## SUMMARY JUDGMENT

In its issue on appeal, Gamma Group contends the trial court erred in granting Home State's motion for summary judgment. The standard for reviewing a traditional summary judgment is well established. *See Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *McAfee, Inc. v. Agilysys, Inc.*, 316 S.W.3d 820, 825 (Tex.App.-Dallas 2010, no pet.). The movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. Tex.R. Civ. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *Nixon*, 690 S.W.2d at 549; *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex.App.-Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex.2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex.App.-Dallas 2000, pet. denied). When, as here, the trial court specifies the ground on which the motion for summary judgment was granted, the court of appeals should consider the ground ruled on

by the trial court, but the appellate court may also consider, in the interest of judicial economy, other grounds preserved for appellate review that the trial court did not rule on. *Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex.1996).

## RES JUDICATA

■ Res judicata precludes relitigation of claims that have been finally adjudicated, or that arise out of the same subject matter and that could have been litigated in the prior action. *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex.1996). In determining what constitutes "the same subject matter," Texas courts follow the "transactional" approach to res judicata set forth in the Restatement (Second) of Judgments. *See Barr v. Resolution Trust Corp.*, 837 S.W.2d 627, 631 (Tex.1992). The Restatement "provides that a final judgment on an action extinguishes the right to bring suit on the transaction, or series of connected transactions, out of which the action arose." *Id.* (citing RESTATEMENT (SECOND) OF JUDGMENTS § 24(1) (1982)). Whether facts constitute a "transaction" or "series" is

> to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.

RESTATEMENT (SECOND) OF JUDGMENTS § 24(2); *see Barr*, 837 S.W.2d at 631.

■ Gamma Group's present suit arises out of the same subject matter as its counterclaim in the underlying suit—Marshall's adjustment of the runoff claims and the adjustment expenses. In the underlying suit, Gamma Group alleged Home State was liable for the "losses and loss adjustment expenses relating to the claims pro-cessing performed by the Marshall Adjustors" because they were incurred at Home State's direction. In this suit, Gamma Group asserts Home State is liable, through indemnity, for "the unreasonable settlement amounts paid by Marshall Adjustors, as well as the resultant attorney's fees, loss adjustment expenses, third-party adjustor fees, costs and interest" because they arose "out of the intentional acts and/or negligence of Home State in connection with rights or obligations of Home State under the agency agreement." We conclude these claims arose out of the same subject matter.

■ Gamma Group argues its claim based on section 13.2 was not litigated in the original case and could not have been raised in it because it was a claim for indemnity against liability and was not mature. "A claim under a liability indemnification clause does not accrue, and thus is not mature, until the indemnitee's liability to the party seeking damages becomes fixed and certain." *Ingersoll–Rand Co. v. Valero Energy Corp.*, 997 S.W.2d 203, 208 (Tex.1999). However, a party may bring an indemnity claim before the judgment establishing liability is final in the interest of judicial economy. *Id.* at 209. The indemnity claim in that situation is permissive, not compulsory. *Id.* at 210. But, if a party brings a permissive indemnity claim, it is required under res judicata to bring all other claims in the same action arising out of the same subject matter. *See Getty Oil Co. v. Ins. Co. of N. Am.*, 845 S.W.2d 794, 799–800 (Tex.1992).

■ In this case, Gamma Group asserts its counterclaim against Home State in the underlying case was compulsory. For a counterclaim to be compulsory, the claim must be mature and owned by the defendant when it files its answer. *Ingersoll–Rand Co.*, 997 S.W.2d at 207. Gamma

Group's counterclaim against Home State in the underlying case alleged,

29. Under the agency agreement, Home State agreed to be responsible for certain expenses, including "losses and loss adjustment expenses incurred at the direction of the Company [Home State]." TRC has claimed that it has incurred, and Gamma is responsible for, additional losses and loss adjustment expenses relating to the claims processing performed by the Marshall Adjusters.

30. Because the claims processing responsibilities were transferred to the Marshall Adjusters at the direction of Home State and TRC, Home State is responsible for any such losses and expenses. Accordingly, if TRC is entitled to recover expenses allegedly incurred relating to the Marshall Adjusters, Gamma is entitled to reimbursement from Home State.

This counterclaim against Home State was dependent upon the court finding that Gamma Group was liable to TRC. It was, essentially, a contractual indemnification claim that would not accrue until the court found Gamma Group liable to TRC, and it was not a mature claim when filed.[2] Thus, Gamma Group's counterclaim under section 6.2 in the underlying case was not a compulsory counterclaim.

Gamma Group was not required to bring its permissive counterclaim for indemnity against Home State in the underlying action. However, when it did so, it was required by res judicata to bring all other claims arising out of the same subject matter that could be litigated in the same action. *See Getty Oil Co.*, 845 S.W.2d at

800. Having brought one claim for indemnity in the underlying case, there is no reason Gamma Group could not have also brought its indemnity claim under section 13.2 in the same action. Accordingly, Gamma Group's claim in this case is barred by res judicata.

Our decision in this case is guided by the Texas Supreme Court's opinion in *Getty Oil Co. v. Insurance Co. of North America.* In *Getty*, a Getty employee, Duncan, was killed by a barrel of chemicals Getty purchased from NL Industries. *Getty*, 845 S.W.2d at 797. Getty's contract with NL contained a provision, section 4, stating NL promised to indemnify Getty for any losses, claims, etc. arising out of the performance of the contract except for losses, claims, etc. solely and proximately caused by Getty. NL also promised in section 4 to maintain sufficient levels of insurance to cover the indemnity agreement. The employee sued NL and Getty amongst others (the *Duncan* suit), and Getty filed a cross claim against NL asserting NL's negligence caused the accident and asserting the contractual right of indemnity under section 4 of the contract. *Id.* In accordance with the jury's verdict, the trial court entered judgment that Getty was 100 percent negligent in causing the accident. *Id.* Getty then filed a claim with NL's insurers, which they denied. *Id.* at 797–98. Getty then sued NL and its principal insurer, Insurance Company of North America, alleging that under section 4 of the contract, NL's insurance should cover Getty for its liability in the *Duncan* suit. *Id.* at 798. NL moved for summary judgment on various grounds, including res judicata. *Id.*

---

**2.** Gamma Group argues that section 6.2 is not an indemnification provision. Although section 6.2 may not be an indemnification provision, Gamma Group's counterclaim—"if TRC is entitled to recover expenses allegedly incurred relating to the Marshall Adjusters,

Gamma is entitled to reimbursement from Home State"—was, as we stated, one for indemnification. *See* BLACK'S LAW DICTIONARY 1312 (2004) (including "Indemnification" in the definition of "reimbursement.").

The supreme court concluded that Getty's suit arose out of the same subject matter as its cross claim against NL in the *Duncan* suit. The court observed that both suits arose from the accident, they both concerned the same contract and the same section of the contract, and they both sought the same relief, reimbursement for Getty's liability to Duncan's estate and beneficiaries. *Id.* at 799.

Getty then argued, as Gamma Group argues in this case, that res judicata could not bar the second suit because the new claims against NL did not accrue until judgment was rendered in the *Duncan* suit since it had no liability, and thus no need for insurance coverage, before liability was assigned. *Id.* The supreme court observed that Getty could have brought its contingent insurance claim in the *Duncan* suit under rule of civil procedure 51(b), just as it brought its indemnity claim, which was also contingent upon its being assigned liability. *Id.; see* TEX.R. CIV. P. 51(b). The court acknowledged that both claims were permissive and neither had to be raised in the *Duncan* suit. *Getty,* 845 S.W.2d at 800. But, "[o]nce it chose to bring some of those claims, however, it was required under res judicata to bring them all in the same action." *Id.* The supreme court affirmed the trial court's grant of summary judgment on the ground of res judicata. *Id.* Several years later, in *Ingersoll–Rand Co.,* the supreme court distinguished *Getty* on its facts, but the court stated, "In all respects, we stand by *Getty.*" *Ingersoll–Rand Co.,* 997 S.W.2d at 209.

The facts of the case before us are similar to those in *Getty.* Like Getty, Gamma Group brought a permissive contractual-indemnification counterclaim in the first suit, and after it lost that suit and was held liable, it brought a second suit seeking nearly identical relief under another provision of the same contract. In both cases, the second suit's claim could have been brought in the first suit but was not. Like the supreme court concluded in *Getty,* we must conclude Gamma Group's suit for indemnity in this case is barred by res judicata.

Accordingly, we also conclude the trial court did not err in granting Home State's motion for summary judgment. We overrule Gamma Group's issue on appeal.

We affirm the trial court's judgment.