GAMMA GROUP, INC., Appellant,

v.

TRANSATLANTIC REINSURANCE CO. and Home State County Mutual Insurance Co., Appellees.

No. 05–10–00705–CV.

Court of Appeals of Texas, Dallas.

March 28, 2012.

Alan B. Rich, Law Office of Alan B. Rich, Dallas, TX, for Appellant.

Steven B. Skarnulis, Charles J. Cain, Cain & Skarnulis, L.L.P., Austin, TX, Brock C. Akers, Evelyn Ailts Derrington, Neal David Kieval, Phillips & Akers, P.C., for Appellees.

Before Justices FITZGERALD, MARTIN RICHTER, and LANG–MIERS.

## OPINION

Opinion By Justice LANG–MIERS.

This is the second appeal in a breach-of-contract lawsuit between an insurance agent, on the one hand, and an insurance company and a reinsurance company, on the other hand. The factual background and previous procedural background underlying the first appeal are explained in detail in our prior opinion in this case, *Gamma Grp., Inc. v. Transatlantic Reinsurance Co.*, 242 S.W.3d 203 (Tex.App.–Dallas 2007, pet. denied) (hereinafter *Gamma I* ), and in our prior opinion in a related case, *Gamma Grp., Inc. v. Home State Cnty. Mut. Ins. Co.*, 342 S.W.3d 762 (Tex.App.-Dallas 2011, pet. denied), and we do not recount them here.

Before the first appeal, the trial court rendered judgment against the insurance agent, appellant Gamma Group, Inc., and awarded approximately $1.3 million in damages to the insurance and reinsurance companies, appellees Home State Mutual Insurance Co. (Home State) and Transatlantic Reinsurance Co. (TRC). In *Gamma I* we concluded that, based on the terms of the applicable agreements, the trial court erred in awarding damages to TRC and Home State because the award was based on reasonable losses rather than incurred losses. As a result, we reversed the judgment as to the amount of damages and "remand[ed] the case to the trial court for calculation of damages based on the incurred loss." *Gamma I*, 242 S.W.3d at 206.

Before the case was remanded, a new trial judge was elected to the trial court. On remand, the new trial judge held an evidentiary hearing at which TRC and Home State submitted evidence that their incurred losses were $2,755,944.62. Gamma did not submit any controverting evidence. Based on TRC's and Home State's uncontroverted evidence, the trial court awarded $2,755,944.62 to TRC and Home State, plus interest and attorneys' fees. The trial court also issued findings of fact and conclusions of law. Gamma filed a motion for new trial, which was overruled by operation of law.

In this second appeal Gamma raises four issues complaining about the admission of certain evidence and the award of damages and interest to TRC and Home State. We resolve Gamma's issues against it and affirm.

### ISSUES ON APPEAL

**First Issue**

██ In its first issue Gamma argues that the evidence of damages presented by TRC and Home State on remand was "outside the mandate" and therefore "no evi-

dence" because it included evidence as of a different time from the evidence presented during the 2005 trial. More specifically, Gamma notes that at the trial in mid–2005, TRC and Home State apparently submitted and relied upon evidence of incurred losses as of February 2005, whereas on remand they submitted and relied upon evidence of incurred losses through the close of the run-off period, which was sometime in 2008. Gamma's complaint is that the evidence presented to the trial court on remand was not restricted to the as–of–February–2005 numbers that were used in the 2005 trial, "which is the only evidence of damages which this Court's mandate permits the trial court to use for its recalculation." *See generally City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005) (noting appellate courts must sustain no-evidence points when record discloses trial court was barred from giving weight to only evidence offered to prove vital fact). Gamma argues that this resulted in a complete "failure of proof" requiring this Court to "reverse the judgment and render judgment in favor of Gamma."

TRC and Home State note that at the time of the 2005 trial, $32,500 in reserves were used to estimate losses for certain pending claims—and by the time of the hearing on remand, those claims had been settled for $20,436.80. TRC and Home State argue that in order to comply with the mandate it was necessary for the trial court to use the actual amount of the settlements, $20,436.80, rather than the higher amount reserved, $32,500, to calculate incurred loss. They note that the actual losses on those claims were less than the reserves and the change benefitted Gamma.

We agree with TRC and Home State. In our mandate we remanded the case to the trial court for the calculation of damages in accordance with our opinion, and in our opinion we explained that damages should be calculated based on incurred losses. We did not restrict the damage calculation to calculations as of February 2005, nor did we instruct the trial court to include reserve and not actual amounts in its damage calculation if it previously used reserve amounts in connection with its prior damage calculation. As a result, we conclude that the evidence of TRC's and Home State's incurred losses on claims previously posted as reserves was not "outside the mandate" and therefore was not "no evidence."

**Second Issue**

In its second issue Gamma also argues that the evidence presented by TRC and Home State on remand was "outside the mandate" and therefore "no evidence" because it included evidence of three run-off claims that were paid directly by TRC for a total of $422,833, known as the Van Dehy, Cummings, and Wakefield claims. Gamma first notes that the trial court's amended findings of fact and conclusions of law and judgment signed after the 2005 trial did not expressly state whether any damages for the directly paid claims were included in the trial court's damages award. And Gamma argues that any evidence of the directly paid claims was "outside the mandate" because in *Gamma I* "this Court was only concerned with *post-termination claims*—the claims adjusted and paid by Marshall Contract Adjustors." In response, TRC and Home State argue that the trial court's consideration of the directly paid claims was in compliance with this Court's mandate because the record demonstrates that the trial court included the directly paid claims as part of its damages calculation after the 2005 trial and because "neither the trial court nor this Court made a distinction between claims handled by Marshall and the directly paid claims, but rather catego-

rized both type[s] of claims as run-off claims [that] were required to be run through the treaties." We agree with TRC and Home State.

In the amended findings of fact and conclusions of law signed by the trial court after the 2005 trial, the trial court included the three directly paid claims in the category of damages sought by TRC and Home State and referred to them as "losses paid on runoff claims and not 'run through' the treaties." More specifically, the trial court noted that TRC sought damages for "a few specifically enumerated matters (*Shepard/Strother, Van Dehy, Wakefield* and *Cummings* )." It also noted,

> The actual damages sought by [TRC] and Home State fall into two broad categories: (1) losses paid on runoff claims and not 'run through' the treaties, with associated expenses of Marshall Contract Adjusters and legal expenses; and (2) damages related to the salvage operations. The extra-contractual cases are included in the first category, with the exception of Shepherd/Strother, which [Gamma] says it paid and settled, and [TRC] says it owes directly without "running it through" the treaty.

Gamma does not dispute the fact that the damages sought for the directly paid claims were for losses paid on runoff claims and not run through the treaties. And the trial court did not indicate that the directly paid claims were excluded from its damage calculation. Moreover, in our opinion and mandate in *Gamma I* we did not make a distinction between claims handled by Marshall and the directly paid claims—we directed the trial court to calculate TRC's and Home State's incurred losses. As a result, we conclude that it was not outside the mandate for the trial court to consider, on remand, the directly

paid claims as part of its calculation of TRC's and Home State's incurred losses.

■ Gamma also argues in its second issue that there is no evidence or insufficient evidence that Gamma can be held responsible for the amount of those payments. In response, TRC and Home State argue that the mandate did not authorize the trial court to reconsider Gamma's liability for the directly paid claims. Alternatively, TRC and Home State argue that the evidence is sufficient to support the trial court's damage findings concerning the directly paid claims. We agree with TRC and Home State.

In our mandate and opinion in *Gamma I* we directed the trial court to calculate TRC's and Home State's incurred losses— we did not direct the trial court to reconsider Gamma's liability. And during the hearing on remand, TRC's and Home State's evidence included uncontroverted testimony from Beth Levene, senior vice president and head of claims for TRC, who testified that the incurred losses included the $422,833 paid to settle the three claims at issue. We conclude that this uncontroverted evidence is sufficient to support the trial court's damages award with respect to the directly paid claims.

■ As another part of its second issue Gamma argues that its liability for a directly paid claim known as the "Van Dehy" claim was limited to $153,850 under the terms of the 1997 quota share reinsurance agreement between TRC and Home State. That claim was settled for $279,833 and that amount was awarded as damages. In response, TRC and Home State argue that damages should not be capped at $153,850 because the provision concerning extra-contractual losses that Gamma relies upon limits TRC's exposure, not Gamma's. We agree with TRC and Home State.

The provision at issue states as follows:

As respects losses occurring during the term of this Agreement, [Home State] obligates itself to cede to [TRC] and [TRC] obligates itself to accept as reinsurance of [Home State] a 100% Quota Share participation of [Home State's] Net Retained Liability, plus its proportionate share of Extra Contractual Obligations and Excess of Original Policy Limits losses, subject to a maximum limit of liability to [TRC] of $153,850 each and every Loss Occurrence for each Policy.

This provision is contained in an agreement between TRC and Home State; Gamma is not a party to that agreement. And the provision at issue limits TRC's exposure by limiting the amount of loss that is being reinsured by Home State; the provision does not refer to Gamma or limit Gamma's liability. We resolve Gamma's second issue against it.

**Third Issue**

In its third issue Gamma complains about the denial of its motion to exclude certain cancelled checks from TRC and Home State's evidence on remand. It argues that there is insufficient evidence to support the trial court's findings of fact concerning the damages because it abused its discretion by admitting certain documents in evidence.

*Background*

After the case was remanded to the trial court, Gamma served TRC and Home State with a request for production of all cancelled checks relating to the claims paid under the agreements at issue. According to TRC and Home State, they produced copies of all cancelled checks in electronic format to Gamma in January 2009. In March 2009 Gamma produced a spreadsheet in response to TRC and Home State's motion for summary judgment showing that its tabulation of the total of the cancelled checks was over $1 million less than the amounts TRC and Home State were claiming was paid to settle claims. To address the difference, TRC and Home State produced copies of certain cancelled checks in electronic format to Gamma in September 2009. The parties disagreed, and continue to disagree, about whether the cancelled checks produced in September 2009 were also included among the cancelled checks produced in January 2009.

On November 24, 2009—one week before the hearing to calculate incurred losses on remand—Gamma filed a motion to exclude the copies of the cancelled checks produced after January 2009. Gamma argued that, after the remand, the case was "a Level 2 case" governed by rule 190.3(b)(1)(B) of the Texas Rules of Civil Procedure, and that discovery closed in July 2009. Gamma also argued that discovery was not made "reasonably promptly" as required by rule 193.5, and, as a result, the trial court was required to exclude the cancelled checks produced after January 2009 from evidence under rule 193.6.

TRC and Home State filed a written response opposing Gamma's motion. In their response TRC and Home State argued that this is not a level two case governed by rule 190.3(b)(1)(B), because it was originally a level three case and it "did not revert to Level 1 or Level 2 on remand." TRC and Home State also argued that they produced all of the cancelled checks in January 2009, and the tabulation Gamma produced in March 2009 was wrong. After a hearing the trial court denied Gamma's motion to exclude the checks at issue, noting that they were "duplicative of previous documents." During the hearing on remand the trial court admitted the cancelled checks at issue as part of Plaintiffs' Exhibit 1.

*Applicable Law*

■ Rule 193.6 establishes a general rule that a party may not introduce evidence at trial if the evidence was requested in discovery and the party did not "make, amend, or supplement a discovery response in a timely manner." Tex.R. Civ. P. 193.6(a). But the trial court has discretion to admit evidence that was not timely disclosed if the proponent of the evidence shows good cause for its failure or shows a lack of unfair surprise or unfair prejudice. Tex.R. Civ. P. 193.6(a), (b). The trial court also has discretion to determine whether the proponent has met its burden. *Bellino v. Comm'n for Lawyer Discipline*, 124 S.W.3d 380, 383–84 (Tex.App.-Dallas 2003, pet. denied). Additionally, we review a trial court's evidentiary ruling for abuse of discretion. *Pinnacle Anesthesia Consultants, P.A. v. Fisher*, 309 S.W.3d 93, 107 (Tex.App.-Dallas 2009, pet. denied). We will uphold the trial court's determination if the ruling has any legitimate basis. *Brunelle v. TXVT Ltd. P'ship*, 198 S.W.3d 476, 477 (Tex.App.-Dallas 2006, no pet.).

*Analysis*

■ On appeal Gamma argues that the trial court abused its discretion by admitting the cancelled checks at issue in evidence as part of Plaintiffs' Exhibit 1 during the hearing on remand because TRC and Home State's document production was not timely supplemented and because TRC and Home State did not prove one of the exceptions under rule 193.6. It argues that, for that reason, there is insufficient evidence to support the trial court's findings. In response, TRC and Home State essentially argue that Gamma was not unfairly surprised or unfairly prejudiced by the admission of Plaintiffs' Exhibit 1 because the information contained in the cancelled checks in question was cumulative of information contained in other documents produced earlier.

We conclude that regardless of whether the cancelled checks at issue were produced reasonably promptly, the trial court did not abuse its discretion by implicitly concluding that Gamma was not unfairly surprised or unfairly prejudiced by admitting the cancelled checks. Lynn Smith testified that Plaintiff's Exhibits 13A–F are check reconciliation registers that identify "every check that was issued, the check number, the date the check was issued, the amount of the check and the status of the check whether it was cleared, voided, or outstanding." Those exhibits contain the same information that appeared on the cancelled checks, and Gamma does not contend that those exhibits were improperly admitted. And ultimately, because there is a legitimate basis for the trial court's ruling and no showing that the trial court acted arbitrarily or without reference to any guiding rules or principles, we conclude that the trial court did not abuse its discretion in admitting the cancelled checks as part of Plaintiff's Exhibit 1 into evidence. We resolve Gamma's third issue against it.

**Fourth Issue**

■ In its fourth issue Gamma challenges the award of postjudgment interest. The trial court awarded postjudgment interest beginning on October 27, 2005 (the date of the original judgment), at a rate of 6.5% (the rate in effect as of the date of the original judgment). Gamma argues that the trial court should have awarded postjudgment interest beginning on March 10, 2010 (the date of the supplemental judgment on remand), at a rate of 5% (the rate in effect as of the date of the supplemental judgment). In response, TRC and Home State argue that the trial court properly awarded postjudgment interest at 6.5% from the date of the original judg-

ment. We agree with TRC and Home State.

Gamma argues that the plain meaning of the word "judgment" in section 304.005(a) of the Texas Finance Code dictates that postjudgment interest should begin to run as of the date of the supplemental judgment. Gamma cites several cases in which appellate courts concluded that postjudgment interest should run from the date of the original judgment, but argues that those cases are distinguishable because, unlike those cases, this case was reversed and remanded for a "retrial" or "second trial" concerning damages. Gamma argues that "[t]here is no binding or persuasive authority for awarding postjudgment interest from the date of an original judgment where the Court of Appeals did not itself render the judgment that the trial court should have rendered." Gamma does not cite any applicable authority to support its argument that postjudgment interest should not run from the date of the original judgment. We disagree with Gamma.

As the trial court stated in its findings of fact and conclusions of law on remand, the prior judgment was "still in full force and effect as to liability issues"—and we remanded the case for the limited purpose of determining TRC's and Home State's incurred losses, which we could not determine ourselves based on the record in *Gamma I.* Under these circumstances, postjudgment interest is properly assessed from the date of the original judgment. *See, e.g., Long v. Castle Tex. Prod. Ltd. P'ship,* 330 S.W.3d 749, 753 (Tex.App.-Tyler 2010, pet. filed) ("a party that *ultimately* prevails is entitled to postjudgment interest from the date the original judgment was rendered, irrespective of whether the original judgment was erroneous, because that is the date upon with the trial court should have rendered a correct judgment")

(emphasis original); *State Dep't of Highways & Pub. Transp. v. City of Timpson,* 795 S.W.2d 24, 27 (Tex.App.-Tyler 1990, writ denied). We resolve Gamma's fourth issue against it.

## CONCLUSION

We resolve Gamma's issues against it and affirm the trial court's first supplemental final judgment after remand.